**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION – DAYTON**

| | |
|---|---|
| **IN RE** | **Case No. 07-34235** |
| **ARETA J. WENTZ** | **Judge Humphrey** |

**Debtor**

**ARETA J. WENTZ**
**1117 N. Maple Street**
**Enon, OH 45320**

     **Plaintiff**

**v.**                          **ADVERSARY NO. _____**

**SAXON MORTGAGE**
**c/o Steven Patterson**
**Lerner Sampson & Rothfuss**
**P.O. Box 5480**
**Cincinnati, OH 45201**

**OCWEN FINANCIAL AND MORTGAGE**
**SERVICES, INC.**
**c/o Martha R. Spaner**
**Shapiro & Felty, L.L.P.**
**1500 West Third Street, Suite 400**
**Cleveland, OH 44113**

**RANDALL MORTGAGE INC**
**c/o Robert R. Shepherd Statutory Agent for**
**Randall Mortgage Services, Inc.**
**655 Metro Place South, Suite 600**
**Dublin, Ohio 43017**

**RANDALL MORTGAGE INC**
**c/o Robert R. Shepherd Statutory Agent for**
**Randall Mortgage Services, Inc.**
**9299 Concord Road**
**Powell, OH 43065**

**U.S. Bank N.A. Trustee for Home Equity**
**Mortgage Trust Series 2005-5, Home Equity**
**Mortgage Pass-Through Certificates, Series**
**2005-5**
**c/o Richard A. Kear**

**Morris Laing Evans Brock & Kennedy**
**300 N. Mead, Suite 200**
**Wichita, Kansas 67202**

**Deborah L. Kistner**
**3175 Benbrook Pond Dr.**
**Hillard, OH 43026-5011**

   **Defendants**

---

## ADVERSARY COMPLAINT

Plaintiff, Areta Wentz, by and through the undersigned counsel, asserts violations of the Truth in Lending Act  ("TILA"), 15 U.S.C. §1601 et. seq., including Home Ownership Equal Protection Act ("HOEPA") violations against Defendant Saxon Mortgage Inc. ("Saxon") and Saxon Mortgage Service Inc. (Collectively "Saxon"), Ocwen Financial and Mortgage Services, Inc. ("Ocwen"), U.S. Bank N.A., Trustee for Home Equity Mortgage Trust Series 2005-5, Home Equity Mortgage Pass-Through Certificates, Series 2005-5 (US Bank) and Randall Mortgage Inc. ("Randall") regarding two mortgages and loans ("Loan 1 and Loan 2)") that are identified as secured claims by Saxon and Ocwen on Plaintiff's residence at 1117 N. Maple Street, Eaton, Ohio 45320 ("The Property"). Real Estate Settlement and Procedures Act ("RESPA") are also asserted against Saxon. Plaintiff further asserts violations of the Ohio Mortgage Broker's Act, 13 ORC §1322.01 et. seq., and fraud against Saxon, Randall and Deborah L. Kistner as the loan originator, broker and Title Closer for Loan 1 and Loan 2.  Plaintiff  also asserts in support of its prior objection, the voidability of the secured claims asserted by Saxon and Ocwen based upon their failure to comply with Ohio recording and notarization  provisions for secured property, ORC §5301.25 and alternatively voiding of Loan 2 as to Ocwen and U.S. Bank based upon the provisions of 11 U.S.C. §1325(b)(2). Plaintiff further joins Rita Ann Rich  ("Rich") a co-signor of Loan 1 and Loan 2 as a necessary party to this proceeding.


## PARTIES

1.  Arita J. Wentz ("Plaintiff" or "Debtor") is a person and the Debtor in the Chapter 13 proceeding who resides at 1117 N. Maple Street, Eaton, Ohio 45320. ("The Property").

2.  Rita Ann Rich ("Rich") is a person and the daughter of Plaintiff and the co-owner of The

Property which Loan 1 and Loan 2 identified as security and  who resides with Plaintiff at 1117 N. Maple Street, Eaton, Ohio 45320.

3.  Defendant Saxon Mortgage Inc. ("Saxon") is a Virginia corporation providing financial funding and services for commercial and residential mortgage loans, which is affiliated with Saxon Mortgage Services Inc. and which is registered as a foreign corporation in the State of Ohio.  Saxon is the lender who provided loan underwriting and either funding or immediate purchase to or from Randall for Loan 1 and Loan 2.

4.  Defendant Ocwen Financial and Mortgage Services, Inc. ("Ocwen") is a foreign corporation doing business in the State of Ohio as a foreign corporation who provides financial services as well as acts as a servicer for commercial and residential property loans.

5.  Defendant Saxon Mortgage Services Inc. ("Saxon") is a servicer of mortgages for Saxon Mortgages Inc and other lenders and is a Texas corporation who is a foreign corporation doing business in the State of Ohio as a foreign corporation

6.  Randall Mortgage Services ("Randall") is a wholesale lender and mortgage broker registered in the State of Ohio who is no longer doing business as a broker in the State of Ohio

7.  Deborah L. Kistner ("Kistner") is a person who acted as the notary for the closing of Loan 1 and Loan 2 as an agent for Priority Land Title Agency and who resides at 3175 Benbrook Pond Dr., Hilliard, OH 43026-5011.

8.  U.S. Bank N.A. ("U.S. Bank") is a Minnesota Corporation doing business in the State of Ohio who provides commercial, business and personal financial and trust services to persons and corporations and other entities in Ohio and other states.

## JURISDICTIONAL STATEMENT

9.  This adversary encompasses claims that are a core proceeding over which the Court has jurisdiction to enter final orders and judgment pursuant to 28 U.S.C. § 157(b)(2)(B)(C)(F) and (H)(K) and (O) and §1334 as well as under the Standing Order of Referral of Title 11 Proceedings to the United States Bankruptcy Court for the Southern District of Ohio. Alternatively, these claims involve matters which directly relate to a core proceeding under 28 USC 157(c)(1) and §1334 over which this Court has jurisdiction.

## FACTS

10. Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding Paragraphs.

11. In April of 2005 the Plaintiff and Rich received a telephone solicitation from Nick [No last name] ("Nick") at Randall about refinancing their existing mortgage loan for The Property and also an outstanding personal loan at a lesser interest rate and for reduced monthly payments.

12. Plaintiff and Rich arranged to meet with Nick at the Property in early May of 2005.

13. Nick, as an agent of Randall, met with Plaintiff and Rich in May 2005 to obtain finance information and review a loan application for purposes of proposing a refinance of a mortgage and a personal loan that Plaintiff and Rich were then obligated to pay.

14. Nick told Plaintiff and Rich that he could obtain two refinance loans to replace their existing two loans with payments being slightly more than the payments for the first mortgage loan of $1,176 and less than their current loan payments for existing loans. (Exhibits 1& 2- Uniform Loan Applications for Loan 1 and Loan 2).

15. Plaintiff and Rich were further led to believe by Nick that their second loan would be a personal loan as was their existing second loan.

16. Plaintiff and Rich further understood that the two loans being proposed by Nick were to be fixed interest rate loans for $120,000 (Loan 1) with the amount for the second loan that was not specifically determined at their first meeting but which was finalized at $30,000 (Loan 2).

17. Plaintiff and Rich were initially both applying as borrowers for the refinancing of the two loans but Nick only took loan application information from Plaintiff regarding refinancing of the two loans (Exhibit 1 & 2 –Table V-Monthly Income)

18. On or about May 23, Nick called Plaintiff and Rich to tell them the loans were approved and made arrangements to bring the loan paperwork to The Property for signature.

19. On the afternoon of May 25, 2005 Nick brought the loan paperwork to Plaintiff for signature.

20. Nick presented loan paperwork to Plaintiff and without any explanation or opportunity to look at the paperwork had Plaintiff sign papers for two loans.

21. In addition to Plaintiff signing paperwork, Nick had Rich sign certain documents from each packet of loan papers but again provided no explanation of the substance or summary of the content or of the loan paperwork being signed.

22. Both Plaintiff and Rich understood that they were agreeing to 30 year fixed interest rate loan that would replace their existing mortgage loan and also a second loan to replace a personal loan

4

in order to reduce their monthly debt payments.

23. The entire loan signing process for Loan 1 and Loan 2 took approximately 1 hour from the time Nick arrived until he departed from the Property.

24. On Plaintiff's best knowledge and belief neither she nor Rich were ever provided the opportunity to review the Uniform Loan Application used by Nick and Randall to obtain the loan financing.

25. On Plaintiff's best knowledge and belief neither she nor Rich were provided any opportunity to review any other Loan 1 or Loan 2 documents included by Nick and Randall for signatures at loan closing on May 25, 2005.

26. When the Plaintiff and Rich finished signing the loan documents, Nick took all of the loan papers with him and left none for Plaintiff or Rich.  Nick did state that loan paperwork would be mailed to Plaintiff sometime later.

27. The loans terms which were signed by Plaintiff without explanation of disclosure of the terms, consisted of the following:

      a.      Loan 1 was a 30 year Libor variable interest rate loan with a principal of $120,000 and interest only payments of $730 for the first two years at 7.3%.  After two years principal payments were to be included in the monthly payment and the interest rate would adjust based on the loan index rate of 5.25% plus the existing Libor rate in effect on July 1 (the two year anniversary date of the loan).  The first adjustment could change the interest rate to no less than 6.5% and no more than 10.5% with interest rate adjustments occurring every six months thereafter but not to exceed 1% and never to exceed a maximum rate of 13.3%. A penalty payment rider was also attached to Loan 1. (Exhibit 3 – Loan # 11878199- Two Year Interest Only, 2 Year Fixed/28 Variable Interest Rate Loan and Exhibit 4 –Mortgage for Loan 11 878199).

      b.      Loan 2 was a 20 year fixed interest rate loan with a principal of $30,000, a 30 year amortized monthly payment of $291.95 with an interest rate of 11.275% and a balloon payment on loan term expiration of $21,246.74.  (Exhibit 5 – Loan 11882694- 20 Year Fixed Rate Loan and Exhibit 4 – Mortgage for Loan 11882694)

28. Although not mentioned or shown to Plaintiff or Rich, the monthly income listed on the Loan Applications for both loans was that of Plaintiff and was stated as $1,228.80 per month. (Exhibit 1 & 2, Table V).

29. Nick told Plaintiff and Rich that Plaintiff's loans were fixed interest rate loans.

30. The monthly payment set forth in the loan application for Loans 1 and 2 was $887 or $1,181.64 depending on whether Loan 1's Loan Application or Loan 2's Application was considered.  (Exhibit 1 and 2, Table V- Mortgage Payments)

31. Loan payments under either Loan 1 or Loan 2 as set forth in the preceding Paragraph were at least 72 percent of Plaintiff's gross income and such payments did not include the cost of property taxes or property hazard insurance for The Property.

32. Approximately 1 week after completing the loan paperwork, Plaintiff received by mail two packages of unsigned and undated loan documents for Loan 1 and Loan 2  indicating they were sent from a Deborah Kistner ("Kistner") at Priority.

33. On Plaintiff's best knowledge and belief either Nick or Randall or both obtained all of the loan paperwork for Loan 1 and 2 from Saxon

34. On Plaintiff's best knowledge and belief Nick or Randall also obtained the services of the notary and agent, Kistner who signed as closing title agent for the loan for a now defunct title company, Priority Land Title Agency ("Priority"). (Exhibit 7, Preble County Recorded 1st and 15th  Page of Mortgage for Loan 1 and  Exhibit 8, Recorded Preble County 1st and 15th Page of Mortgage for Loan 2)

35. On Plaintiff's best knowledge and belief Priority and Kistner were affiliated with Randall and provided most if not all of the title closings for mortgage loan originated or funded by Randall.

36. The only persons present at the loan closing on May 25, 2005 were Plaintiff, Rich and Nick.

37. Plaintiff on information and belief first became aware that the signatures of Kistner were on loan documents when Rich obtained a copy of the recorded mortgages for Loan 1 and 2 from the Preble County Court in late 2007.

38. Rich did insert the signature of her husband, William J. Rich, on the Page 4 of the mortgage for Loan 2 at the request of Nick although he was not present on May 25, 2005.

39. While the HUD 1 for Loan 2 shows a disbursement of $482.76 (Exhibit 9 – HUD Settlement Statement for Loan 2 dated May 25, 2005- Line 1604) to the borrower, neither Plaintiff nor Rich, to the best of  Plaintiff's knowledge, ever received any funds from Loan 2.

40. Prior to the date of closing Plaintiff did provide Nick with financial information for the loan applications but she received no documents or information about the Loan from anyone

including Randall, Nick or Saxon before or at the loans closing.

41. Plaintiff first became aware that Loan 1 was an interest only loan when she and Rich received a notice from Saxon that the payment for Loan 1 would increase.

42. Plaintiff received notice of an interest rate change on Loan 1 on or about May 7, 2007 when Saxon advised by letter that the interest rate would increase from 7.3% to 10.5% (the maximum increase) and that her monthly payments would increase from $730 to $1,030 which was a 41% increase in payment for Loan 1.

43. Although never mentioned or referenced by Nick at closing, Plaintiff received in the paperwork mailed to her after closing variable rate loan information for Loan 1 that reflected an amortized payment schedule for both a 2 year and a 5 year interest only adjustable rate loan that identified her highest monthly payment as $875  for the first five years for either a 2 or 5 year interest only loan. (Exhibit 10 - 5 year interest only, 30 year adjustable rate – Amortization Schedule for $120,000 loan).

44. On Plaintiff's best knowledge and belief, Plaintiff was required by Saxon and Randall to use the services of all providers identified and listed on the HUD 1 Settlement Statements as receiving any funds from either Loan 1 or Loan 2.

45. To obtain Loan 1 and Loan 2, Randall or Saxon had The Property appraised by Polaris Appraisal for a fee of $525 (Exhibit 11 – HUD Settlement Statement, Loan 2 dated May 25, 2005- Line 803)), charged to Plaintiff, with a resultant market valuation based upon alleged comparable sales for $150,000. (Exhibit 1 & 2, Block VI – Assets and Liabilities- Real Estate)

46. The Property was valued by an independent appraiser in Plaintiff's Chapter 13 bankruptcy case November of 2007 at $106,000. (Exhibit 12, Appraisal of The Property by C.E. McMonigle, dated November 21, 2007).

47. Appraisal value by Preble County for The Property in 2005 was $81,200 (Exhibit 13, Preble County 2005 Appraisal of The Property)

48. The usual cost for an appraisal of residential property in the Preble County area in 2005 was no more the $325.

49. The price charged for the appraisal to the Plaintiff of $525 as part to her closing cost for Loan 1 was not reasonable or typical for residential appraisals in Preble County.

50. The disclosed Finance Fee for Loan 1 amounted to $6,619 on the HUD 1 Settlement Statement (Exhibit  11) which consisted of the following:

| | |
|---|---|
| Origination Fee- Randall (line 801) | $ 4,800.00 |
| Flood Cert – Randall (Line 805) | 14.00 |
| Tax Service - Saxon (Line 806) | 66.00 |
| Underwriting– Saxon (Line 807) | 650.00 |
| Broker Courier - Randall (Line 808) | 45.00 |
| Broker Administration – Randall (Line 810) | 350.00 |
| Broker Processing – Randall (Line 830) | 400.00 |
| Interest- Prepaid (Line 901) | 24.00 |
| Settlement Closing – Priority Land Title (Line1101) | 200.00 |
| Express Mail Fee- Priority Land Title (Line 1303) | 50.00 |
| Wire Fee – Priority Land Title (Line 1304) | 20.00 |
| Total Finance Charge | $ 6,619.00 |

51. The Express Mail Fee listed on the HUD was stated as $60 but calculated in the Finance Charges as $50.

52. The Finance charges did not include the Appraiser Fee of $525.

53. At The Loan closing on May 25, 2001, Randall and Nick received an additional $2,400 as a Yield Spread Premium ("YSP") which payment was imposed on Plaintiff by Saxon and Randall through a higher interest rate for Loan 1 than Plaintiff would have received if the premium payment had not been made. (Exhibit 11, Line 811 – POC).

54. Plaintiff was never told or informed by Randall or Nick or Saxon a YSP was being paid to anyone for making Loan 1 to Plaintiff.

55. On affirmation and belief Plaintiff now is aware that a lower rate of interest or perhaps a fixed interest rate loan was available to her for Loan 1 and she was never told or informed by Randall, Nick or Saxon that the YSP paid out resulted in her having to pay a higher interest rate for Loan 1 than she could have obtained if the YSP had not been paid.

56. Plaintiff received no additional benefit or services from Randall, Nick or Saxon for the additional YSP payment.

57. TILA 15 U.S.C. §1605.5(a) and HUD Implementing Regulations (Regulation Z), 12 C.F.R. § 226.4(c)(7) provide that that appraisal fees that are not bona fide are to be categorized as finance charges.

8

58. Payments paid to a mortgage broker directly or indirectly by a consumer are finance charges under TILA guidelines as set forth in TILA 15 U.S.C. § 1605(a)(6) and Regulation Z, 12 C.F.R. §226.4(a)(3).

59. Under HOEPA guidelines, mortgage broker payments are finance charges and fees required to be included in calculating the requirement for HOEPA disclosure as set forth in 15 U.S.C. §1602(a)(a) and §1639(a) under the points and fees 8 % trigger  standard set forth in Regulation Z, 12 C.F.R. §§ 226.32(a)(1)(i) and (b)(1)(ii).

60. Inclusion of the not bona fide appraisal fee of $525 and the YSP fee of $2,400 as part of the fees for refinancing under HOEPA reflects fees at $9,520 which amount is more than 8.435 % of the Total Loan Amount of $112,856 as established and defined under the guidelines set forth in Staff Commentary to Regulation Z, §226.32(a)(1)(ii) for HOEPA fee calculations.

61. The inclusion of the not bona fide appraisal fee and the YSP fee as part of the Finance charge results in Loan 1 finance charges exceeding the 8% Trigger amount under 15 U.S.C. §1602(aa) and subjects Loan 1 to HOEPA requirements.

62. The issuance of any loan subject to HOEPA requires a lender to notify the consumer in writing three days prior to the issuance of the loan of specific information (Section 32 notice) as follows: 1) the borrower has a right to not complete the agreement despite disclosures and completing a loan application; 2) advice that the loan included a mortgage on the home that would result in loss of the home if the loan obligation is not met; and 3) a statement of the applicable APR and monthly payments for the loan. 15 U.S.C. §§ 1602(aa); 1639(a), (b); 12 C.F.R. § 226.32(c).

63. Plaintiff has never received HOEPA Section 32 notices for Loan 1.

64. The provisions of TILA further require a lender and broker to provide meaningful and timely disclosures to a borrower for a refinance loan at the time of closing which provisions include:

     a.     Two Notices of the Right to Cancel as specified in 15 U.S.C. §1635(a) and Regulation Z, 12 CFR §226.23(b)(1).

     b.     A Truth in Lending Disclosure regarding Annual Percentage Rate ("APR"), actual finance charges, variable interest rate terms, amounts financed penalty payment provisions and other disclosures as specified in 15 U.S.C. §§1632,  1637a and 1638 and 12 CFR §226.18 and 226.19.

     c.     Pre-closing notices and information regarding variable rate and adjustable rate

loans including a Charm booklet that explains variable rate loans in a consumer friendly manner as specified in 15 U.S.C. §1637a(a)(2) and amplified by 12 CFR §226.19(b).

      d.      A closing statement for the estimated expenditures made for a loan refinancing which is commonly labeled  a HUD- 1 closing statement as specified by 15 U.S.C. §1637a(b) and amplified in 12 CFR §226.19(a).

65. The provisions of the Real Estate Settlement and Procedures Act (RESPA – 12 U.S.C. §2601, et seq. and specifically §2604(c)) and its implementing regulations, Regulation X (24 CFR §3500, et seq. and specifically 24 CFR §3500.7) also require a lender and broker to disclose a reasonable estimate of the charges and costs to be assessed incurred in settlement of a specific loan which is called a Good Faith Estimate (GFE).

66. Plaintiff never received any of the notices required by TILA and RESPA as set forth in ¶¶ 64-65 at or before the closing for either Loan 1 or 2.

67. The provisions of HOEPA, 15 U.S.C. §1639(h) prohibit a creditor from engaging in a pattern or practice of extending credit to consumers for high priced or HOEPA loans that fails to consider or disregards the ability of the consumers repayment ability.

68. Saxon and subsequent assignees of Loan 1 and Loan 2 failed to consider or ignored the fact that the listed income of Plaintiff of $1282.80 per month from retirement income on her Uniform Loan Applications would not be enough to meet the mortgage payments for Loan 1 and Loan 2 which were estimated by Saxon and its agents to be at least  $1,181.64 when the two loans were approved.

69. The payment calculations and documents contained in the loan files of Loan 1 and Loan 2 reflect a required monthly principal and interest payments by Plaintiff for the two loans that was 92% of Plaintiffs total monthly income.

70. On information and belief, Plaintiff states that Saxon and its agents have previously and on more than one occasion extended credit to consumers like Plaintiff whose income and employment records documented the inability to make repayment requirements of these mortgages.

71. Plaintiff has never received any HOEPA notices or variable rate loan pre-disclosures or Charm booklet information as regards Loan 1.

72. The failure to provide the HOEPA notice or the pre-closing variable rate notices and charm booklet for Loan 1 and  failure to provide at closing the Right to Cancel Notices, variable rate

disclosures, HUD-1 and the TILA disclosures for Loan 1 and Loan 2 were material disclosure requirements under TILA, 15 U. S. C. §16021(u) and these material non-disclosures were a violation of TILA under 15 U.S.C. §1640(a).

73. The mortgage agreement for Loan 1 and Loan 2 as filed in Preble County Common Pleas Court sets forth a notarization signature by a Deborah Kistner with an execution date of May 25, 2005 and asserts that the documents were notarized "in Preble County". (Exhibit 7, Page15 and Exhibit 8, Page 4).

74. Based on Plaintiff's best knowledge and belief, the only person representing Randall or Saxon who was present for the loans signing on May 25, 2005 was Nick who was the loan broker for these loans and not a notary public.

75. No title agent from Priority was in attendance to witness or notarize Plaintiff's or Rich's signature on any of the two loans documents as falsely represented on the recorded entries for Loan 1 and Loan 2.

76. Neither Plaintiff nor Rich ever signed any loan documents in the presence of Kistner in Preble County or anywhere else and have never met or spoken to Kistner.

77. Kistner knowingly and intentionally falsified her notary signature on the mortgage documents for Loan 1 and Loan 2 representing she was present and witnessed signatures appearing on these loan documents.

78. On best information and belief, Plaintiff states that Kistner's signature is falsely represented on other loan documents for Loan 1 and Loan 2 as being made on May 25, 2005 in the presence of Plaintiff and Rich when such did not in fact occur.

79. Based upon exercise of due diligence and review of loan history on The Property, Saxon and Ocwen knew or should have known that the appraisal fees charged to support the origination of the two loans was not bona fide and was excessive.

80. Both Saxon and Ocwen knew or should have known from comparison of income stated for Plaintiff on the Uniform Loan Applications and the finance charges that the two loans did not comply with TILA requirements because:

    a.   The amount listed for new mortgage loan payments for Loan 1 and Loan 2

by Plaintiff of either $1,183 or $850 was more than 70% of her reported monthly income of $1,282.

    b.   The appraisal fee listed on the HUD statements for both loans was in excess of

appraisal fees that were commonly charged for residential appraisals in Southwest Ohio.

  c. The amortized schedule for Loan 1's interest only, variable rate loan includes inconsistent and contradictory information regarding a 5 year interest only variable rate loan.

  d. Due diligence comparison of prior appraisals and county appraisals for The Property's Polaris appraisal of $150,000 would reflect that the appraisal by Polaris was substantially above fair market value for The Property.

81. Plaintiff was never advised by Nick, Randall or Saxon that a $2,400YSP would be paid in addition to a mortgage broker fee of $4,800 for making the loan.

82. Plaintiff effectively paid the YSP because her interest rate and variable rate for Loan 1 was at a higher rate than she would have received if the YSP had not been paid.

83. Plaintiff made regular payments on the two loans until she became aware for the first time that the interest rate and payments were to change on Loan 1 when notified by Saxon of the changes in May 2007.

84. Plaintiff did not become aware of the additional YSP fees, failure to comply with TILA disclosure requirements and RESPA violations for the specific terms of Loan 1 and Loan 2 nor of the misrepresentations of Nick and Randall that her loans were fixed rate loans instead of interest only, variable rate and balloon payment loans to replace her existing two loans until contacting a home ownership counselor and subsequently her bankruptcy attorney in August 2007.

85. At all relevant times pertaining to Loans 1 and 2, Saxon, Ocwen, US Bank and Randall or there predecessor or successor organizations or assignees were creditors who regularly extended consumer credit to borrowers or consumers payable by written agreement in more than four installments for which a finance charge is imposed.

86. As a refinancing of a previously existing loan and a "consumer credit transaction," the two loans Saxon extended to Plaintiff is subject compliance with TILA provisions (15 U.S.C. § 1601 *et seq.*) and TILA implementing regulations (Regulation Z, 12 C.F.R. § 226 *et seq.*).

87. As a refinancing of a previously existing loan and a "consumer credit transaction," the two loans Saxon extended to Plaintiff is subject compliance with RESPA provisions (12U.S.C. § 2607) and RESPA implementing regulations (Regulation X, 24C.F.R. § 3501 *et seq.*).

88. The provisions of TILA, 15 U.S.C. §1641 regarding liability of an assignee for violations of TILA by an originator of a loan apply to Ocwen and US Bank or any successor or owner of Loan

2 for whom Ocwen serves as an agent.

89. The provisions of Ohio's Mortgage Broker Act, ORC §1322.01 et. seq. apply to Randall.

90. Due to the misrepresentations and non compliance with mortgage broker provisions of ORC §1322 by Randall, Plaintiff has incurred additional costs and fees for Loan 1 and Loan 2 on The Property and to protect her legal rights and remedies regarding The Property including her filing of a Chapter 13 Bankruptcy case.

91. Due to the misrepresentations and non compliance with TILA regulations, Plaintiff has incurred additional costs and fees in order to protect her legal rights and remedies regarding The Property including her filing of a Chapter 13 Bankruptcy case.

92. As a result of the TILA and HOEPA violations and the misrepresentations by Saxon, Randall and its agents regarding obtaining a new loan and appraisal value, the Plaintiff on September 25, 2007 rescinded Loan 1 and Loan 2 by sending rescission letters to Saxon and Ocwen. (Ex.14– Wentz Rescission Notices to Saxon and Ocwen dated September 25, 2007)

93. Ocwen, on behalf of U.S. Bank, acknowledged receipt of the cancellation notice on October 11, 2007 and denied the rescission action by the Plaintiff (Ex.15 - Notice of Receipt and Rejection of Cancellation dated October 11, 2007).

94. Saxon received the notice of rescission on September 27, 2007 (Exhibit 16- Certified Mail Receipts dated September 27 signed by Frank Williams).

95. As of February 25, 2007 Saxon has not responded to the Plaintiff's rescission letter.

96. Under the provisions of 15 U.S.C. §1640(a)(1)-(3) a borrower is entitled to damages for violations of TILA and HOEPA and as counterclaims as to any collection effort of a creditor liable for a TILA or HOEPA violation.

97. All causes of action by Plaintiff against Saxon, Randall and Kistner are claims asserted by Plaintiff against and directly related to the claims filed by Saxon and Ocwen.

98. On Plaintiff's best affirmation and belief, Saxon ,Ocwen and US Bank, or any loan holder represented by Saxon may have causes of action against Randall, Polaris, Kistner and Priority based upon negligence, fraud and breach of contract or warranty agreements and other claims under Loan 1 and Loan 2.

99. On Plaintiff's best affirmation and belief, Plaintiff states that Loan 1 and Loan 2, while brokered by Randall and Nick,were originated, co-ordinated, underwritten, evaluated and approved by Saxon.

13

100.    On affirmation and belief, Plaintiff states that Saxon and its agents had knowledge of the TILA and HOEPA violations based upon information contained in the loan documents in their possession for Loan 1 and Loan 2.

101.    On affirmation and belief, Plaintiff states that U.S. Bank and its agents had knowledge of the TILA and HOEPA violations based upon information contained in the loan documents in their possession for Loan 2.

102.    Saxon and Ocwen have asserted secured claims against Plaintiff in her Chapter 13 case case (Claims 1 and 5) which Plaintiff has objected these claims to based upon voidability provisions of Ohio real estate law, ORC §5301.25,  and the provisions of 11 U.S.C. § 506, as well as other federal and state laws related to mortgage lending.

## CAUSES OF ACTION

## FIRST CLAIM - TILA DISCLOSURE VIOLATIONS

103.    Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding Paragraphs.  This claim is asserted against Defendants Saxon, Ocwen, and US Bank.

104.    The failure of Saxon and its agent Randall to provide Plaintiff and Rich with timely Notices of the Right to Cancel for Loan 1 and Loan 2 at loan closing is a violation of 15 U.S.C. §1635(a) and Regulation Z, 12 CFR §226.23(b)(1).

105.    The failure of Saxon and its agent Randall to provide the Truth in Lending Disclosure to Plaintiff for Loan 1 and Loan 2 so as to disclose the annual APR, finance charges, variable rate terms, penalty payments and other disclosure requirements for both loans at closing is a violation and non compliance with 15 U.S.C. §§1632, 1637a and 1638 and 12 CFR §226.18 and 226.19.

106.    The failure of Saxon and its agent Randall to provide variable rate and adjustable rate loans including a Charm booklet that explains variable rate loans in a consumer friendly manner for Loan 1 is a violation of and non-compliance with 15 U.S.C. §1637a(a)(2) and amplified by 12 CFR §226.19(b).

107.    The failure of Saxon and its agent Randall and US Bank and its agent Ocwen to properly evaluate and consider the ability of Plaintiff to meet payments based on disclosed income information on the Loan 1 and Loan 2 Uniform Loan Application provided to Plaintiff after closing demonstrates and reflects a pattern and practice of extending credit without properly

14

considering consumers  and Plaintiffs ability to pay mortgage payments in violation of 15 U.S.C. §1639(h).

108.    The failure to comply with TILA disclosures as set forth in the preceding paragraphs of the First Claim by Saxon for Loan 1 and Loan 2 and by US Bank and Ocwen for Loan 2 are material mis-disclosures or non-disclosures under TILA, 15 U.S.C. §1605(u).

109.    The failure of Saxon to respond to Plaintiff's TILA rescission with a tender offer is a TILA violation under 15 U.S.C. §1635 (b).

110.    US Bank as an assignee of Loan 2 was or should have been aware of the TILA violations of Saxon and its agents and is liable for the actions of Saxon as regards TILA non-compliance and rescission as to Loan 2 pursuant to 15 U.S.C. §1641(d).

111.    Plaintiff is entitled to damages under 15 U.S.C. § 1640(a)(1) - (3), as well as  costs and attorney fees because of the TILA non-disclosure and mis-disclosures required by TILA and the rescission actions by Plaintiff for Loan 1 and Loan 2.

112.    Plaintiff is further entitled to additional damages under 15 U.S.C. §1635 (g) and §1640(a)(2) for the failure of  Saxon to respond and submit a tender offer to Plaintiff as required when a borrower exercises the right of rescission.

## SECOND CLAIM - HOEPA NON-COMPLIANCE

113.    Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding paragraphs.  This claim is asserted against Defendant Saxon.

114.    The TILA Disclosure Statement for Loan 1 (Exhibit 17) did not include in the finance charge the cost of the excessive appraisal fee of $525 (Exhibit 11 , Line 803) or the YSP paid to Randall  of $2400 (Exhibit 11, Line 811).

115.    HOEPA provisions of TILA apply any time where finance charges required to be disclosed exceed 8% of the Total Loan Amount.

116.    The Total Loan Amount is the amount financed reduced by any closing costs considered finance charges but not properly listed.  As such, finance charges for the purpose of calculating the 8% (Trigger) threshold include all closing costs defined as finance fees by TILA, whether or not the fee was properly disclosed. 15 U.S.C. §1602 (aa)(1)(B); 12 CFR §226.32(a)(ii)&(b)(1).

117.    The Loan was subject to HOEPA's provisions based upon finance fees exceeding the Trigger percentage of 8% of the Total Loan Amount.  Determinations of the fee exceeding the

Trigger are computed by the guidelines set forth in 12 CFR §226.32(b)(1) as explained in

Paragraph 1 of Official Staff Commentary §226.32(a)(1)(ii) for 12 CFR §226.32 (a)(1)(ii).  The

calculation under these guidelines based upon the TILA Disclosure (Exhibit 17and HUD

Settlement Statement (Exhibits11) reflects the following:

| | | |
|---|---|---|
| Total Loan Amount Disclosed- Ex 17-(Amount Financed) | | $113,381.00 |
| Less Unreasonable Fees Charged at Closing Considered | | |
| Finance Charges | Appraisal Fee –Ex 11-(Line 803) | 525.00 |
| | YSP- Ex 11 (Line 811) | 2,400.00 |
| | | |
| Total Loan Amount as Revised | | $110,456.00 |
| Finance Charges for The Loan | | |
| As Disclosed at Closing – Ex -11 – Page 2) | $6,619.00 | |
| Unreasonable or Undisclosed Charges | | |
| Appraisal | 525.00 | |
| YSP-Broker | 2,400.00 | |
| Revised Finance Charges | | $  9,544.00 |
| Revised Finance Charges Percentage to Total Loan Amount | | |
| $9,544 Finance Charge / $110,456 Total Loan Amount = 8.6188 % | | |

118.    The Loan was issued in violation of TILA and HOEPA provisions since the finance

charges as correctly calculated at 8.6188 % exceeded the 8 % Trigger and Plaintiff has never

received any advanced or subsequent Section 32 notice of disclosures as required for high cost

loans under HOEPA §§1602(aa) and 1639 (a) and (b).

119.    The failure to disclose the correct finance charge and disclosure notices under HOEPA is

a material mis-disclosure and non-disclosure in violation of TILA 15 U.S.C. §1602(u).

120.    Saxon also failed to properly consider the stated income of Plaintiff and ability to make

payments for the monthly mortgage loan payments for Loan 1 and Loan 2 and has done so with

other borrowers on other loans.

121.    Saxon's failure to properly consider Plaintiff's ability to make payments on Loan 1 and

Loan 2 based on her stated income and a pattern and practice of failure to consider borrowers

ability to meet mortgage payments is a violation of 15 U.S.C. §1639 (h)

122.    Plaintiff is entitled to statutory damages and enhanced damages pursuant to 15 U.S.C. §§

1640(a)(4) for failure of to comply with HOEPA disclosure provisions of 1639(a), (b) and (h).

123.    Plaintiff is further entitled to costs and attorney fees for violations of HOEPA..

### THIRD CLAIM – FRAUD

124.    Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding paragraphs.  This claim is asserted against Saxon, Kistner and Randall.

125.    Defendant Randall through its representatives Nick knowingly and falsely induced Plaintiff to apply for Loan 1 and Loan 2 by stating that she would obtain a 30 year fixed interest rate loan for Loan 1 and a personal loan for Loan 2.

126.    Defendant Randall through its agent Nick further misrepresented and fraudulently induced Plaintiff to execute Loan 1 and Loan 2 without telling Plaintiff that the requested fixed rate loan for Loan 1 was an adjustable rate loan and that Loan 2 was a balloon loan and secured mortgage loan on The Property.

127.    Neither Saxon or Randall  or its agents informed Plaintiff of the additional YSP charge of $2400.00 which resulted in Plaintiff receiving a higher interest than she could have been provided without the YSP fee and for which neither Saxon or Randall provided any additional services.

128.    Saxon , Kinster and Randall further misrepresented and falsified loan documents, or assisted in the falsification of loan documents as being signed in the presence of both Plaintiff and Rich when they knew in fact Plaintiff's signature was neither witnessed nor notarized by Kinster on the dates and the location listed on the recorded mortgage documents for Loan 1 and Loan 2.

129.    Kinster, with the assistance of Randall further arranged for the fraudulent recording of the mortgage document for Loan 1 and Loan 2 with an erroneous notarization statement and dates since they knew that none of Loan 1 and Loan 2 documents were ever viewed in the presence of Kinster and Plaintiff and Rich at the same time or place.

130.    Kinster and Randall further misrepresented on loan documents that Plaintiff had received a distribution payment from Loan 1 when Plaintiff in fact received no such payment.

131.    Kinster with the assistance of Randall through its agent Nick further falsely dated and notarized other documents for Loan 1 and Loan 2 since Kinster was not present when the loans were signed by Plaintiff and Rich.

132.    Saxon and Randall further knew or had reason to know that the appraisal fee of $525 was

not bona fide and that the fee or a portion thereof was actually paid to Randall or its agents as compensation.

133.    Randall further failed to disclose its monetary interest or kickback from the appraisal fee.

134.    Saxon further had reason to know of the inability of Plaintiff to meet the payments for Loan 1 and 2 based on financial information made available on the Uniform Loan Application for both loans but failed to take any action to verify or assure the Plaintiff's ability to meet the credit payments required by the loans.

135.    Defendants' intentional fraudulent actions resulted in Plaintiff having loan payment which she could not afford and which resulted in her becoming financially insolvent so as to require her filing of the Chapter 13 bankruptcy petition.

136.    As a direct and proximate cause of Defendants' actions, the Plaintiff has suffered financial injury and emotional injury which Defendants' actions constitute the tort of fraud.  In the alternative, Defendants' actions constitute the tort of constructive fraud and fraud by inducement.

137.    These actions were taken with actual intent, malice, ill will, reckless indifference and/or negligence toward Plaintiff and Plaintiff is entitled to receive actual, compensatory, and punitive damages, in an amount to be determined.

## FOURTH CLAIM – VOIDABLE SECURED CLAIM

138.    Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding paragraphs.  In addition, the allegations in this claim closely relate to those set forth above at Claim Fifth.  The allegations as contained in this claim are asserted against Saxon, Ocwen and any subsequent assignees of Loan 1 and Loan 2.

139.    Under the provisions of ORC §5301.01, for a mortgage to be recorded as a secured lien signatures must be executed before a notary public.

140.    Plaintiff execution of Loan 1 and Loan 2 on May 25, 2005 was witnessed only by Nick who was not a notary public whereas Loan 1 and Loan 2 mortgage documents list Deborah Kistner as the notary witnessing and notarizing this same document on May 25, 2005.

141.    Under the provisions of ORC §5301.25 a mortgage that is not properly recorded is considered fraudulent and accordingly not a secured claim.

142.    Neither Saxon, US Bank or Ocwen or any subsequent assignee of Loan 1 or Loan 2 have

subsequently obtained Plaintiff's signature on the Loan mortgage documents in the presence of a notary public or other witnesses.

143.    Under the provisions of 11 U.S.C. §506 a claim that is not secured is considered voidable and effectively relegated to a Class V or unsecured claim.

144.    Under the provisions of 11 U.S.C. §544(a) the Chapter 13 Trustee can avoid the secured claim of Deutsche/Ocwen in Plaintiff's Chapter 13 case.

145.    Plaintiff on behalf of the Chapter 13 Trustee avoids Loan 1 and Loan 2.

146.    Accordingly, for the benefit of Plaintiff and the Chapter 13 Trustee representing unsecured creditors, the secured claim of Defendants Saxon and US Bank and Ocwen are voidable and the secured claim by Deutsche/Ocwen must be deemed void under 11 U.S.C. § 506.

## FIFTH CLAIM - MORTGAGE BROKER ACT VIOLATION

147.    Plaintiff reiterates and incorporate all allegations and statements set forth in the preceding paragraphs.  The allegations as contained in this claim are asserted against Randall.

148.    Randall, as registered and licensed mortgage brokers in the State of Ohio, is subject to the provisions of the Mortgage Brokers Act.  O.R.C. § 1322.01 *et. seq*.

149.    Randall through its agent Nick acted in a deceptive, improper, fraudulent, or dishonest manner as registered mortgage brokers in violation of the Act. O.R.C. § 1322.07(c) by:

a.      Inducing Plaintiff to agree to refinancing of an existing fixed rate mortgage and another personal loan on their home to a 2 year interest only, 28 year variable interest rate loan and a second mortgage loan with a balloon payment without initially advising Plaintiff of any terms for  Loan 1 and Loan 2..

b.      Failing to provide Plaintiff or Rich with any of the documents for Loan 1 or Loan 2 at the closing of these loans.

c.      Inducing Plaintiff to refinancing through Loan 1 and Loan 2 based on a false statements that  Loan 1 was a 30 year fixed interest rate loan and implying that Loan 2 would be a personal loan and not disclosing its balloon provisions.

d.      Failing to disclose the payment and acceptance of a YSP fee of $2400 as an additional fee that was effectively paid by Plaintiff and for which no additional services were provided to Plaintiff.

e.      Falsely stating in loan documents that Plaintiff would receive a cash payment

when none was received.

150.    As a result of transaction for Loan 1 and Loan 2 Plaintiff was left with two mortgage loans with increased and increasing interest rates that placed Plaintiff in further debt on her home and resulted in Plaintiff being unable make payments on the two loans.

151.    The actions of  Randall also caused Plaintiff to file a Chapter 13 bankruptcy to resolve the increasing debt burden caused by the upward increase of  the interest only, variable rate Loan 1 when combined with the Loan 2 payments and having a balloon note payment due at termination of Loan 2 exceeding $21,000.

152.    Randall through its agent Nick's misrepresentations caused Plaintiff to incur mortgage loan payments and debt that did not meet the promised lower monthly payments that were to replace existing loan payments of Plaintiff and Rich.

153.    These actions were taken with malice, ill will, and/or reckless indifference toward the Plaintiffs to enable Saxon and Randall and Nick to obtain a quick profit from Loan 1 and Loan 2 transactions.

154.    Accordingly, Plaintiffs are entitled to receive from Randall for both compensatory and punitive damages as well as attorney fees pursuant to ORC § 1322.11, in an amount to be determined at trial, for the injuries they suffered as a result of this transaction.

## SIXTH CLAIM – LIEN AVOIDANCE

155.    Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding paragraphs. The allegations contained in this claim are asserted against Defendant US Bank and Ocwen.

156.    The Plaintiff filed her Chapter 13 case on September 27, 2007 with the Plan confirmed on February 14, 2008 (Case Docket 33.

157.    Ocwen, presumably on behalf of US Bank has filed a secured claim of $29,691.99 (Case Claim1) under Plaintiff Debtors Chapter 13 plan.

158.    Saxon has filed a priority first secured claim in the amount of $120,892.67 (Case Claim 5)under Plaintiff Debtors Chapter 13 plan .

159.    While Plaintiff asserts that the claim of Saxon is void based upon allegations set forth in Plaintiff's Fourth Claim, the claim of Saxon for the First Loan exceeds the value of The Property

20

as set forth in the appraisal under the Chapter 13 Plan of $106,000.(Exhibit  12)

160.    Under the provisions of 11 U.S.C. §1325(b)(2) and §506 a secured second lien on property that is valued at less than a first secured lien is treated as an unsecured lien.

161.    Saxon's alleged secured claim of $120, 892.67 exceeds The Property's current appraised value.

162.    Since there is no secured value to the Second Loan of Ocwen in The Property even if Saxon were to prevail as to its assertion of a secured claims as to the First Loan, the Plaintiff has no obligation to pay any secured claims to US Bank or Ocwen under her Chapter 13 Plan.

163.    Accordingly, any amounts owed to US Bank, Ocwen or any subsequent assignee as a lien interest on The Property are to be avoided either under Plaintiff's Fourth Claim or the Sixth Claim pursuant to  and paid as a Class Five unsecured claim under the Chapter 13 Plan.


## SEVENTH CLAIM- RESPA VIOLATION-KICKBACK

164.    Plaintiff reiterates and incorporates all allegations and statements set forth in the preceding paragraphs. The allegations contained in this claim are asserted against Defendant Saxon.

165.    The payment of the YSP of $2400 by Saxon to Randall for brokering of Loan 1 in addition to a broker=s fee was in violation of RESPA, 12 U.S.C. 2607(a) as a kickback or percentage of fee based upon the broker and lender obtaining an additional fee without proper disclosure or furnishing of service to the Defendant.

166.    Payment of the kickback or percentage of fee is a prohibited action by either by the paying or receiving party under RESPA.

167.    Saxon, as the originator Loan 1, in paying Randall a YSP of $2400 in addition to a broker fee of $4,800  paid a fee to Randall that was based on charging Plaintiff a higher interest rate than was available in order to recoup the YSP payment.

168.    Plaintiff in fact received no benefit of any service for payment of the YSP but instead received an inferior and higher interest rate loan as a result of the payment of the YSP.

169.    Plaintiff is entitled to treble damages for the YSP  kickback received by Randall from Saxon as provided for under 15 U.S.C. 2607(d)(2) and (5).

170.    RESPA requires violations of 12 U.S.C. 2614 to be brought within one year of a violation of Section 2607(a), remedies available under 11 U.S.C. §157(b)(2)(C) include counterclaims by

Plaintiff or recoupment,

171.    Under the provisions of RESPA as authorized under 15 U.S.C. 2607(d)(6), recoupment and counterclaim entitle Plaintiff to recover treble the amount of the fees paid by Saxon to Randall.

172.    Plaintiff is also entitled to cost and attorney fees in bringing this RESPA recoupment counterclaim pursuant to 15 U.S.C. §2607(d)(4).

**WHEREFORE**, Plaintiff prays that the court enter judgment as follows:

    a.  Declare the secured claims of Saxon and Ocwen/US Bank are voidable and void for failure to be properly recorded a  secured lien and to be treated as a Class 5 unsecured claims by the Chapter 13 Trustee;

    b.  Award Plaintiff statutory damages of $2,000 against any claim of Saxon for the violations of TILA for Loans 1 and 2 pursuant to 15 U.S.C. §1640 (a)(1) and (2);

    c.  Award Plaintiff statutory damages of $2,000 against any claim of Saxon for the violations of TILA for Loans 1 and 2 pursuant to 15 U.S.C. § 1635 and §1640 (a)(1) and (2) for failure to respond to Plaintiff's rescission notice on Loan 1;

    d.  Award Plaintiff statutory treble damages of $7,200 against any claim of Saxon for violations of RESPA kickback prohibitions under 12 U.S.C. §2607(d);

    e.  Award Plaintiff an offset of all finance charges and closing cost paid by Plaintiff on Loan 1 as to any claim of Saxon for HOEPA non disclosure and pattern and practice violations of 15 U.S.C. §1639(a)(1) and (h) pursuant to 15 U.S.C. §1640(a)(4)

    f.  Award statutory damages of $2,000 against the claim of Assignee Ocwen and US Bank Morgan based upon the violations of TILA pursuant to 15 U.S.C. §1640 (a)(1) and (2) and 15 U.S.C. 1641(d);

    g.  Order an offset of any claim amounts in favor of Saxon or Ocwen/US Bank for violations of TILA, RESPA and HOEPA by Saxon and Ocwen/US Bank;

    h.   Award actual and punitive damages in an amount to be determined at trial based upon findings of fraud by Randall, Saxon and Kistner;

    i.   Award actual and punitive damages in an amount to be determined at trial based upon violations of ORC §1322.07 by Randall and its agents;

    j.   Award of all reasonable attorney's fee and costs as authorized under TILA 15 U.S.C. §1640(a), 12 U.S.C. §2607(d)(5) and ORC §1322.11; and

    k.   Award such other relief at law or equity as this Court may deem just and proper.

Respectfully Submitted

/s/Charles J. Roedersheimer
Charles J. Roedersheimer      #0020273
Thompson & DeVeny Co. LPA
1340 Woodman Drive
Dayton, OH 45320
937-252-2030
937-252-9425 Fax
charles@thompsonanddeveny.com

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing was served by ECF/electronic notice or U.S. Mail Postage Prepaid on February 26, 2008 on the following as set forth herein
By ECF/Electronic Notice:

U.S. Trustee, 170 N. High Street, Suite 200, Columbus, Ohio 43215;

Jeffrey M. Kellner, Chapter 13 Trustee, 131 North Ludlow Street, Suite 900, Dayton, Ohio 45402-1161;

Steve Patterson, Lerner Sampson & Rothfuss, P.O. Box 5480, Cincinnati, OH 45201. Attorney for Saxon Mortgage Inc.

Martha R. Spaner, Shapiro & Felty, L.L.P., 1500 West Third Street, Suite 400
Cleveland, OH 44113, Attorney for Ocwen Mortgage Services Inc. and U.S. Bank N.A.

And by regular U.S. Mail Postage Prepaid:

Areta Wentz, 1117 N. Maple Street, Eaton, OH 45320

/s/ Charles J. Roedersheimer
Charles J. Roedersheimer



**EXHIBIT**

Loan # 11878199

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA   ☐ Conventional   ☐ Other: <br> ☐ FHA   ☐ USDA/Rural Housing Service | Agency Case Number | Lender Case No. |
|---|---|---|---|

| Amount | Interest Rate | No. of Months | Amortization Type: | ☐ Fixed Rate   ☐ Other (explain): <br> ☐ GPM   ☒ ARM (type): 5/60X 2 YR Int. Only |
|---|---|---|---|---|
| $ 120,000.00 | 7.300 % | 360 | | |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & zip code) | No. of Units |
|---|---|
| 1117 N Maple Street | 1 |

Legal Description of Subject Property (attach description if necessary)

See Schedule A attached hereto and made a part hereof.

Year Built: 1920

| Purpose of Loan | ☐ Purchase   ☐ Construction <br> ☒ Refinance   ☐ Construction-Permanent | ☐ Other (explain): | Property will be: <br> ☒ Primary Residence   ☐ Secondary Residence   ☐ Investment |
|---|---|---|---|

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made |
|---|---|---|---|---|
| 1900 | $ 0.00 | $ 126,000.00 | | Cost: $ 0.00 |

| Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: <br> ☐ Fee Simple <br> ☐ Leasehold (show expiration date) |
|---|---|---|

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER'S INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Borrower's Name (include Jr. or Sr. if applicable) <br> Anita J. Wentz | Co-Borrower's Name (include Jr. or Sr. if applicable) <br> Rita Ann Rich |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB(MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (937) 456-4028 | 03/02/1933 | 0 | | | | 0 |

| ☒ Married   ☐ Unmarried (include single, divorced, widowed) <br> ☐ Separated | Dependents (not listed by Co-Borrower) <br> no.   ages | ☐ Married   ☐ Unmarried (include single, divorced, widowed) <br> ☐ Separated | Dependents (not listed by Borrower) <br> no.   ages |
|---|---|---|---|

| Present Address (street, city, state, zip code) ☒ Own ☐ Rent 45.00 No. Yrs. <br> 1117 N Maple Street <br> Eaton, OH 45320 | Present Address (street, city, state, zip code) ☐ Own ☐ Rent 0.00 No. Yrs. |
|---|---|

| Mailing Address, if different from Present Address <br> 1117 N Maple Street <br> Eaton, OH 45320 | Mailing Address, if different from Present Address <br> 1117 N Maple Street <br> Eaton, OH 45320 |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, zip code) ☐ Own ☐ Rent No. Yrs. | Former Address (street, city, state, zip code) ☐ Own ☐ Rent No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|
| Name and Address of Employer   ☐ Self Employed <br> GM Hourly Pension Plan | Yrs. on this job <br> 0.00 <br> Yrs. employed in this line of work/profession <br> 0.00 | Name and Address of Employer   ☐ Self-Employed | Yrs. on this job <br> Yrs. employed in this line of work/profession |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer   ☐ Self Employed | Dates (from – to) <br> Monthly Income <br> $ | Name & Address of Employer   ☐ Self-Employed | Dates (from – to) <br> Monthly Income <br> $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer   ☐ Self Employed | Dates (from – to) <br> Monthly Income <br> $ | Name & Address of Employer   ☐ Self Employed | Dates (from – to) <br> Monthly Income <br> $ |
|---|---|---|---|

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Borrower's Signature  X | Date | **PRINTED DATE: 5/25/2005** | Freddie Mac Form 65/Rev. 01/04 <br> Fannie Mae Form 1003/Rev. 01/04 <br> GFS Form 0033(3X6) |
|---|---|---|---|
| Co-Borrower's Signature  X | Date | | |

11878199

11878199

D_H1003
D_H1003

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 1,176.00 | 785.49 |
| Bonuses | | | | Other Financing (P&I) | | 291.95 |
| Commissions | | | | Hazard Insurance | | 52.00 |
| Dividends/Interest | | | | Real Estate Taxes | | 65.78 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing see the notice in "describe other income" below) | 1,228.80 | | 1,228.80 | Homeowner Assn. Dues | | |
| | | | | Other | | |
| **Total** | $ 1,228.80 | $ | $ 1,228.80 | **Total** | $ 1,176.00 | $ 1,208.07 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | Other Social Security Inc. | 1,228.80 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [ ] Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | Monthly Payt. & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|
| Description Cash deposit toward purchase held by: | $ | LIABILITIES | $ Payment/Months | $ |
| List checking and savings accounts below Name and address of Bank, S&L, or Credit Union | | Name and address of Company Mortgage * BENFCL/HFC | | |
| Acct. no. | $ | Acct. no. 6517410057 | 1,176.00/103 | 130,083.64 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company Revolving * BENFCL/HFC | $ Payment/Months | |
| Acct. no. | $ | Acct. no. 6517411353 | 200.00/50 | 9,678.00 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company Revolving CHASE | $ Payment/Months | |
| Acct. no. | $ | Acct. no. 444400300063 | 33.00/51 | 859.00 |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company Revolving CHASE | $ Payment/Months | |
| Acct. no. | $ | Acct. no. 444400006377 | 33.00/47 | 498.00 |
| Stocks & Bonds (Company name/number & description) | $ | Name and address of Company Revolving LANE BRYANT | $ Payment/Months | |
| | | Acct. no. 5719950272998440 | 15.00/22 | 326.00 |
| Life insurance net cash value | $ | Name and address of Company Revolving ELDER BEERMAN | $ Payment/Months | |
| Face amount $ | | | | |
| Subtotal Liquid Assets | $ | Acct. no. 94553017 | 10.00/16 | 151.00 |
| Real estate owned (enter market value from schedule of real estate owned) | $ 150,000.00 | Name and address of Company | $ Payment/Months | |
| Vested interest in retirement fund | $ | *********************** ** See Addendum ** *********************** | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | 33.00 | 104.00 |
| Other Assets (itemize) | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| | | Job Related Expense (child care, union dues, etc.) | | |
| | | Total Monthly Payments | $ 81.00 | |
| **Total Assets a.** | $ 150,000.00 | Net Worth (a minus b) | $ 148,062.00 | **Total Liabilities b.** | $ 3,938.00 |

Borrower's Signature:
X _____ Date
Co-Borrower's Signature:
X _____ Date

* Payoff is Required.    ** Not Included in Total.

Freddie Mac Form 65/Rev. 01/04
Fannie Mae Form 1003/Rev. 01/04
GFS Form 0023(3K6)

VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|---|
| 1117 N Maple St | | | | | | | | |
| Eaton, OH  45320 | Own | Single Fam | $ 150,000.00 | $ 126,000.00 | $ | $ 1,176.00 | $ | $ |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| Totals | | | $ 150,000.00 | $ 126,000.00 | $ | $ 1,176.00 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

| VII. DETAILS OF TRANSACTION | | | VIII. DECLARATIONS | | | | | |
|---|---|---|---|---|---|---|---|---|

VII. DETAILS OF TRANSACTION

| | | |
|---|---|---|
| a. Purchase price | $ | |
| b. Alterations, improvements, repairs | | |
| c. Land (if acquired separately) | | |
| d. Refinance (incl. debts to be paid off) | 140,062.64 | |
| e. Estimated prepaid costs | 24.00 | |
| f. Estimated closing costs | 3,120.00 | |
| g. PMI, MIP, Funding Fee | | |
| h. Discount (if Borrower will pay) | | |
| i. Total costs (add items a through h) | 143,206.64 | |
| j. Subordinate financing | 30,000.00 | |
| k. Borrower's closing costs paid by Seller | | |
| l. Other Credits (explain) | | |
| | | |
| | | |
| | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 120,000.00 | |
| n. PMI, MIP, Funding Fee financed | | |
| o. Loan amount (add m & n) | 120,000.00 | |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -2,793.36 | |

VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower | | Co-Borrower | |
|---|---|---|---|---|
|  | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | ☐ | ☒ | ☐ | ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ | ☒ | ☐ | ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☒ | ☐ | ☐ |
| d. Are you a party to a lawsuit? | ☐ | ☒ | ☐ | ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such items as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | ☐ | ☒ | ☐ | ☐ |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☒ | ☐ | ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☒ | ☐ | ☐ |
| h. Is any part of the down payment borrowed? | ☐ | ☒ | ☐ | ☐ |
| i. Are you a co-maker or endorser on a note? | ☐ | ☒ | ☐ | ☐ |
| j. Are you a U.S. citizen? | ☒ | ☐ | ☐ | ☐ |
| k. Are you a permanent resident alien? | ☐ | ☒ | ☐ | ☐ |
| l. Do you intend to occupy the property as your primary residence? If "Yes" complete question m below. | ☒ | ☐ | ☐ | ☐ |
| m. Have you had an ownership interest in a property in the last three years? | ☒ | ☐ | ☐ | ☐ |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | | | | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | | | | |

IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X | | X | |

X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for.)

BORROWER [X] I do not wish to furnish this information     CO-BORROWER ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino     ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino     ☐ Not Hispanic or Latino |
|---|---|---|---|
| Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander   ☐ White | Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African American<br>☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Hispanic origin | | | |
| Sex: | ☐ Female   ☐ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| ☐ face-to-face interview | | |
| ☐ Mail | Interviewer's Signature                          Date | |
| ☐ Telephone | | |
| ☐ Internet | Interviewer's Phone Number (incl. area code) | Application Date: 05/17/2005 |

Freddie Mac Form 65/Rev. 01/04                                                    Fannie Mae Form 1003/Rev. 01/04

## Continuation Sheet/Residential Loan Application

| | Borrower: | Agency Case Number: |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Anita J. Wentz | |
| | Co-Borrower: | Lender Case Number: |
| | Rita Ann Rich | |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature: | Date: | Co-Borrower's Signature: | Date: |
|---|---|---|---|
| X | | X | |

Freddie Mac Form 65/Rev. 01/04                                                                 Fannie Mae Form 1003/Rev. 01/04

Loan # 11882694

Uniform Residential Loan Application



This application is designed to be completed by the applicants with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse will not be used as a basis for loan qualification, but his or her liabilities must be considered because the Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.



## I. TYPE OF MORTGAGE AND TERMS OF LOAN

Mortgage Applied for: ☐ VA  ☐ Conventional  ☐ Other:  ☐ FHA  ☐ USDA/Rural Housing Service

Agency Case Number | Lender Case No.

Amount $ 32,000.00 | Interest Rate 11.275 % | No. of Months 240 | Amortization Type: ☒ Fixed Rate ☐ GPM ☐ Other (explain): ☐ ARM (type):

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

Subject Property Address (street, city, state, & zip code) | No. of Units
1117 N Maple Street
Eaton, OH  45320

Legal Description of Subject Property (attach description if necessary) | Year Built
See Schedule A attached hereto and made a part hereof. | 1920

Purpose of Loan ☐ Purchase ☐ Construction ☐ Other (explain): ☒ Refinance ☐ Construction-Permanent
Property will be: ☒ Primary Residence ☐ Secondary Residence ☐ Investment

Complete this line if construction or construction-permanent loan.
Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b)
| $ | $ | $ | $ | $

Complete this line if this is a refinance loan.
Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements ☐ made ☐ to be made
0 | $ | $ | Debt Consolidation | Cost: $

Title will be held in what Name(s) | Manner in which Title will be held | Estate will be held in: ☐ Fee Simple ☐ Leasehold (show expiration date)

Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain)

## III. BORROWER'S INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

Borrower's Name (include Jr. or Sr. if applicable): Areta J. Wentz
Co-Borrower's Name (include Jr. or Sr. if applicable): Rita Ann Rich

Social Security Number 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 | Home Phone (incl. area code) (937)456-4028 | DOB (MM/DD/YYYY) 03/02/1933 | Yrs. School 12
Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School 0

☒ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Co-Borrower) no. ages
☐ Married ☐ Unmarried (include single, divorced, widowed) ☐ Separated | Dependents (not listed by Borrower) no. ages

Present Address (street, city, state, zip code) ☐ Own ☐ Rent 3.00 No. Yrs.
1117 N Maple Street
Eaton, OH  45320
Present Address (street, city, state, zip code) ☐ Own ☐ Rent 0.00 No. Yrs.

Mailing Address, if different from Present Address
1117 N Maple Street
Eaton, OH  45320
Mailing Address, if different from Present Address
1117 N Maple Street
Eaton, OH  45320

If residing at present address for less than two years, complete the following:
Former Address (street, city, state, zip code) ☐ Own ☐ Rent ___ No. Yrs.
Former Address (street, city, state, zip code) ☐ Own ☐ Rent ___ No. Yrs.

## IV. EMPLOYMENT INFORMATION

| | Borrower | Co-Borrower |
|---|---|---|

Name & Address of Employer ☐ Self Employed | Yrs. on this job 0.00
OH Pension | Yrs. employed in this line of work/profession 0.00
Name and Address of Employer ☐ Self Employed | Yrs. on this job | Yrs. employed in this line of work/profession

Position/Title/Type of Business | Business Phone (incl. area code)
Position/Title/Type of Business | Business Phone (incl. area code)

If employed in current position for less than two years or if currently employed in more than one position, complete the following:
Name & Address of Employer ☐ Self Employed | Dates (from - to) | Monthly Income
Name & Address of Employer ☐ Self Employed | Dates (from - to) | Monthly Income

Position/Title/Type of Business | Business Phone (incl. area code)
Position/Title/Type of Business | Business Phone (incl. area code)

Name & Address of Employer ☐ Self Employed | Dates (from - to) | Monthly Income
Name & Address of Employer ☐ Self Employed | Dates (from - to) | Monthly Income

Position/Title/Type of Business | Business Phone (incl. area code)
Position/Title/Type of Business | Business Phone (incl. area code)

Borrower's Signature X ___ Date
Co-Borrower's Signature X ___ Date

PRINTED DATE: 5/25/2005

Freddie Mac Form 65/Rev. 01/04
Fannie Mae Form 1003/Rev. 01/04
GFS Form 00253(3K6)

11882694

11882694

D_H1003
D_H1003

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ | $ | $ | Rent | | |
| Overtime | | | | First Mortgage (P&I) | 1,376.00 | 730.00 |
| Bonuses | | | | Other Financing (P&I) | 180.00 | 157.00 |
| Commissions | | | | Hazard Insurance | | 51.00 |
| Dividends/Interest | | | | Real Estate Taxes | | 80.28 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income" below) | 1,228.80 | | 1,228.80 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 1,228.80 | $ | $ 1,228.80 | Total | $ 1,476.00 | $ 1,013.28 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

Describe Other Income Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| B | Other Social Security Inc ~ | 1,228.40 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed ☐ Jointly ☐ Not Jointly

| ASSETS | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | Monthly Payt. & Months Left to Pay | Unpaid Balance |
|---|---|---|---|---|---|
| Description Cash deposit toward purchase held by: | $ | LIABILITIES | | $ Payment/Months | $ |
| List checking and savings accounts below | | Name and address of Company Mortgage * BENFCL/HFC | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | ** | ** |
| | | Acct. no. 6513410057 | | 1,136.00/107 | 130,083.64 |
| Acct. no. | $ | Name and address of Company Revolving * BENFCL/HFC | | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | ** | ** |
| | | Acct. no. 6517411751 | | 200.00/50 | 9,079.00 |
| Acct. no. | $ | Name and address of Company Revolving CHASE | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. 4444001063 | | 17.00/51 | 859.00 |
| Acct. no. | $ | Name and address of Company Revolving CHASE | | $ Payment/Months | |
| Name and address of Bank, S&L, or Credit Union | | | | | |
| | | Acct. no. 4444005322 | | 12.00/42 | 498.00 |
| Acct. no. | $ | Name and address of Company Revolving LANE BRYANT | | $ Payment/Months | $ |
| Stocks & Bonds (Company name/number & description) | $ | | | | |
| | | Acct. no. 5319956272999440 | | 15.00/22 | 326.00 |
| Life insurance net cash value | $ | Name and address of Company | | $ Payment/Months | |
| | | Revolving ELDER BEERMAN | | | |
| Face amount: $ | | | | | |
| Subtotal Liquid Assets | $ | Acct. no. 94552017 | | 10.00/16 | 151.00 |
| Real estate owned (enter market value from Schedule of real estate owned) | $ 150,000.00 | Name and address of Company | | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | | |
| Net worth of business(es) owned (attach financial statement) | $ | ** See Addendum ** | | | |
| Automobiles owned (make and year) | $ | | | | |
| | | Acct. no. | | 27.00 | 166.00 |
| Other Assets (itemize) | $ | Alimony/Child Support/Separate Maintenance Payments Owed to | | ** | |
| | | Job Related Expense (child care, union dues, etc.) | | | |
| | | | | | |
| | | Total Monthly Payments | | $ 81.00 | |
| Total Assets a. | $ 150,000.00 | Net Worth (a minus b) | $ 148,062.00 | Total Liabilities b. | $ 1,938.00 |

| Borrower's Signature: | Date | * Payoff is Required. | ** Not included in Total. |
|---|---|---|---|
| X | | | |
| Co-Borrower's Signature: | Date | | Freddie Mac Form 65/Rev. 01/04 |
| X | | | Fannie Mae Form 1003/Rev. 01/04 |
| | | | GPS Form 0023(3K6) |

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 1117 N Maple St. Eaton, OH  45320 | (none) | $ 150,000.00 | $ 135,000.00 | $ | $ 1,376.00 | $ | $ |
| | | | | | | | |
| Totals | | 150,000.00 | 135,000.00 | $ | $ 1,376.00 | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 140,062.64 |
| e. Estimated prepaid items | 9.27 |
| f. Estimated closing costs | 394.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 140,265.91 |
| j. Subordinate financing | 120,000.00 |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 30,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 30,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | -9,734.09 |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

|  | Borrower Yes | Borrower No | Co-Borrower Yes | Co-Borrower No |
|---|---|---|---|---|
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | | X | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | X | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | | X | | |
| h. Is any part of the down payment borrowed? | | X | | |
| i. Are you a co-maker or endorser on a note? | | X | | |
| j. Are you a U.S. citizen? | X | | | |
| k. Are you a permanent resident alien? | | X | | |
| l. Do you intend to occupy the property as your primary residence? If "Yes" complete question m below. | X | | | |
| m. Have you had an ownership interest in a property in the last three years? | X | | | |
| (1) What type of property did you own - principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| (2) How did you hold title to the home - solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |

## IX. ACKNOWLEDGMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Borrower's Signature X | Date | Co-Borrower's Signature X | Date |
|---|---|---|---|

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the Lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may neither discriminate on the basis of this information, nor on whether you choose to furnish it. However, if you choose not to furnish it, under Federal regulations this Lender is required to note race and sex on the basis of visual observation or surname. If you do not wish to furnish the above information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the Lender is subject under applicable state law for the particular type of loan applied for).

**BORROWER** ☐ I do not wish to furnish this information     **CO-BORROWER** ☐ I do not wish to furnish this information

| Ethnicity: | ☐ Hispanic or Latino  ☒ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
|---|---|---|---|
| Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☒ White | Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White   ☐ Hispanic origin |
| Sex: | ☒ Female   ☐ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| ☒ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Signature _____ Date ___ | |
| | Interviewer's Phone Number (incl. area code) | Application Date: 05/24/2005 |

Freddie Mac Form 65/Rev. 01/04     Fannie Mae Form 1003/Rev. 01/04

**Continuation Sheet/Residential Loan Application**

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Borrower or C for Co-Borrower. | Borrower:<br><br>Areta J. Wentz | Agency Case Number: |
|---|---|---|
| | Co-Borrower:<br><br>Rita Ann Rich | Lender Case Number: |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature:<br><br>X | Date | Co-Borrower's Signature:<br><br>X | Date |
|---|---|---|---|

Freddie Mac Form 65/Rev. 01/04                                                            Fannie Mae Form 1003/Rev. 01/04

EXHIBIT

11878199

# Interest Only ADJUSTABLE RATE NOTE

**(Adjusting to principal and interest payments after sixty months)**
**(6 Month LIBOR INDEX-RATE CAPS)**
(As published in *The Wall Street Journal*)

*3*

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE MAY CHANGE AT ANY ONE TIME AND MAXIMUM RATE I MUST PAY.**

May 25, 2005          Dublin          Ohio
   *[Date]*           *[City]*           *[State]*

1117 N Maple Street
Eaton, Ohio 45320
               *[Property Address]*

**1.    BORROWER'S PROMISE TO PAY**
In return for a loan that I have received, I promise to pay U.S. **$120,000.00** (this amount is called "Principal"), plus interest, to the order of the Lender. Lender is **Saxon Mortgage, Inc.**.
I will make all payments under this Note in the form of cash, check or money order.
I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

**2.    INTEREST**
Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of **7.300 %**. The interest rate I will pay may change in accordance with Section 4 of this Note.
The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

**3.    PAYMENTS**
   **(A)    Time and Place of Payments**
I will make my monthly payments on the first day of each month beginning on **07/01/2005**. Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

I will make monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have all of the principal interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If on **June 1, 2035**, I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."
I will make my monthly payments at 4880 Cox Road, Glen Allen, Virginia 23060, or at a different place if required by the Note Holder.

   **(B)    Amount of My Initial Monthly Payments**
My monthly payment will be in the amount of U.S. **$730.00** before the first and any subsequent interest rate Change Date as described in Section 4. My monthly payment will also change on the First Principal and Interest Payment Due Date, and thereafter will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of change in monthly payment.

No payments of principal are due during the Interest Only Period. The Interest Only Payments will not reduce the principal amount of this Note. Additional payments of principal may be made in accordance with Section 5 of this Note, as modified by a Prepayment Addendum, if any.

   **(C)    Monthly Payment Changes**
During the Interest Only period, changes in my monthly payment will reflect changes in the interest rate that I must pay. After the Interest Only Period, changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Page 1 of 5
Sax Form N170 (06.23.2003)
MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - WSJ 6 MONTH LIBOR INDEX
964470N1.uff

4.    **ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(A)  **Change Dates**

The interest rate I will pay may change on the first day of **June, 2007**, and the adjustable interest rate I will pay may change on that day every 6th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B)  **The Index**

Beginning with the first Interest Rate Change Date, my interest rate will be based on an Index. The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C)  **Calculation of Change**

Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding **Five and 250/1000** percentage point(s) **5.250%** to the Current Index. The Note Holder will then round the result of this addition up to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Interest Rate Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

(D)  **Limits on Interest Rate Change**

The interest rate I am required to pay at the first Change Date will not be greater than **10.300%** or less than the greater of **6.300**, or the margin. Thereafter, my adjustable interest rate will not be increased or decreased on any single Change Date by more than one percentage point from the rate of interest I have been paying for the preceding 6 months. My interest rate will never be greater than **13.300%** or less than **6.300%**.

(E)  **Effective Date of Change**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Rate Change Date until the amount of my monthly payment changes again.

(F)  **Notice of Change**

The Note Holder will deliver or mail to me a notice of any change in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

(G)  **Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be the first day of the month following the 60th month of my loan.

5.    **BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist of only interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist of only interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my Partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

6.    **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial Prepayment.

7.    **BORROWER'S FAILURE TO PAY AS REQUIRED**
     **(A)  Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of **15** calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be **5.000%** of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.
     **(B)  Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

     **(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me or delivered by other means.
     **(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.
     **(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8.    **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9.    **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any of one of us may be required to pay all of the amounts owed under this Note.

10.   **WAIVERS**

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Page 3 of 5
Sax Form N170 (06.23.2003)
MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - WSJ 6 MONTH LIBOR INDEX
964470N3.uff

11.  **UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond or deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is permitted by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and uniform Covenant 18 of the Security Instrument shall read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond or deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is permitted by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to the Lender.

To the extent permitted by applicable law, Note Holder may charge a reasonable fee as a condition to Note Holder's consent to the loan assumption. Note Holder may also require the transferee to sign an assumption agreement that is acceptable to Note Holder and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Note Holder releases Borrower in writing.

If the Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Arita J. Wentz                  Borrower                                         Borrower

_____ (Seal)          _____ (Seal)
                                Borrower                                         Borrower

_____ (Seal)          _____ (Seal)
                                Borrower                                         Borrower

_____ (Seal)          _____ (Seal)
                                Borrower                                         Borrower

*[Sign Original Only]*

Page 5 of 5
Sax Form N170 (06.23 2003)
MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - WSJ 6 MONTH LIBOR INDEX
964470N5.uff

**2-YEAR LIBOR ARM (Adjusts Semi-annually After Initial 2 Years)**
IMPORTANT ADJUSTABLE-RATE MORTGAGE LOAN INFORMATION
PLEASE READ CAREFULLY

LENDER: Saxon Mortgage, Inc.

This disclosure notice is given to you in connection with your application for an adjustable rate mortgage loan and provides information that you should read. An adjustable-rate mortgage loan ("ARM") is a type of loan that permits changes in the loan interest rate. Such changes generally are based on changes in an index, and normally result in an increase or decrease in the regular monthly loan payment. **We offer other ARM programs in addition to those described in this document. Information on other ARM programs we offer will be provided upon request.** The Lender or any other party holding your loan by transfer and having the right to receive payments under the loan is called the "Note Holder."

**Your Initial Interest Rate**

- Interest rates in our ARM programs are based on an "index" and a "margin." An index is a published measurement of current interest rates in specific financial markets or investments. A margin is a percentage defined in your agreement with the Lender that will be added to the index to determine the interest rate on your loan.
- **Your Index.** The index rate for this program is the average of interbank offered rates for six-month U.S. dollar- denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. If this index is no longer published or is otherwise unavailable at any Interest Rate Change Date, the Note Holder will choose a new index that is based on comparable information and will give you notice of this choice.
- **Current Index and Margin.** The index as of the beginning of this year, and a sample recent margin, are shown in the "Example of Operation of the Loan" on page 3. The index and margin change frequently. Please ask us about the current index and margin.
- **Discount or Premium.** From time to time we offer initial interest rates which are "discounted", which means that the initial rate is less than the rate that would result from adding your margin to the current index. Please ask if your initial rate reflects any discount or premium (any initial rate in excess of the current index plus margin). Any discount or premium applies only to your initial interest rate, and will not be reflected in future rate adjustments.

**How Your Interest Rate and Payment are Determined**

- Beginning on the first interest rate change date, your interest rate will be determined by adding the current index rate to the margin and then rounding the sum to the nearest one-eighth of one percentage point (0.125%). Each date on which your interest rate could change is called an "Interest Rate Change Date". Ask us for our current interest rate and margin.

- When your interest rate adjusts, your principal and interest payment will be based on the new interest rate, loan balance and remaining loan term. The new payment will be an amount sufficient to repay the loan balance at the new interest rate in substantially equal payments over the remaining loan term.

**How Your Interest Rate Can Change**

- Your first interest rate change can occur on your twenty-fourth (24th) monthly payment due date. Thereafter, your interest rate can change every six (6) months.
- Your interest rate cannot increase by more than a certain percentage over the initial interest rate at the first Interest Rate Change Date. This is called your "Initial Interest Rate Change Cap." Our programs presently feature an Initial Interest Rate Change Cap of 3.00%. Thereafter, your interest rate cannot increase or decrease by more than one percentage point (1.00%) at each Interest Rate Change Date. This is called your "Periodic Interest Rate Change Cap."
- Your interest rate cannot increase by more than a certain percentage over the initial interest rate during the term of the loan. This is called your "Lifetime Interest Rate Change Cap." Our programs presently feature Lifetime Interest Rate Change Cap of 6.00%. Please ask about the available Lifetime Interest Rate Change Cap.
- Your interest rate cannot decrease during the term of the loan below a certain minimum interest rate (the "Floor"). Our programs presently feature a Floor equal to 1% below the initial interest rate; or equal to the margin, whichever is greater.

**How Your Payment Can Change**

- Your first monthly payment change will be one (1) month after the first interest rate change. Thereafter, your monthly payment can change every six (6) months based on changes in the interest rate.
- You will be notified in writing at least 25, but no more than 120, days prior to the due date of a payment at a new level. This notice will contain information about your index, interest rate, payment amount, and loan balance and will include the title and telephone number of a person who will answer any question you may have regarding the notice.

**Late Charge**

- If your payment arrives after it is due, you will be obligated to pay a late charge as a percentage of the monthly payment of principal and interest. Our typical late charge is 5% of the unpaid amount in the event your payment is not made within 15 days of the due date, but the amount and timing may be different in accordance with applicable law.

Page 1 of 3
Last modified 02.09.2004
SMI 2-Year Post 08.18.03 LIBOR ARM DISCLOSURE
96440691.uff

**Prepayment Penalty**

- Usually, unless otherwise limited by state law, your loan will provide for a prepayment penalty if you pay off your loan early, or prepay in excess of certain limits (usually, the limit is 20% of the outstanding principal balance within any one year period). The prepayment penalty is in effect only during the first few years of your loan (usually three years) and consists of an amount equal to six months interest, at the rate then in effect on your loan, on the amount which is prepaid in excess of the allowed limit. The specific duration and/or amount of the prepayment penalty may vary in your state. Please ask about the specific prepayment penalty (if any) applicable to your loan

**Assumption; Demand Feature in the event of Sale or Transfer of the Property**

- Your loan documents will contain what is commonly called a "due-on-sale" clause. This means that if you sell or otherwise transfer the property prior to repayment of the debt without our prior written consent, we may require immediate payment in full of all sums secured by the Security Instrument for your loan unless prohibited by federal law as of the date of the Security Instrument

- This right to require immediate payment of your loan will not be exercised by the Note Holder if: (a) you cause to be submitted to Note Holder information required by Note Holder to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Note Holder reasonably determines that Note Holder's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in the Security Instrument is acceptable to Note Holder.

- To the extent permitted by applicable law, Note Holder may charge a reasonable fee as a condition to Note Holder's consent to the loan assumption. Note Holder may also require the transferee to sign an assumption agreement that is acceptable to Note Holder and that obligates the transferee to keep all the promises and agreements made in the Note and in the Security Instrument for your loan. You will continue to be obligated under the Note and the Security Instrument unless the Note Holder releases you in writing.

**Escrow (Impound) Payments**

- Under our ARM programs, unless specifically agreed otherwise or if inconsistent with state law, you may be required to pay to the Note Holder with each regularly scheduled payment under your loan, a portion of the real estate taxes, insurance, and any other charges or fees expected to become due on your home loan each year. The purpose of requiring these payments in advance is to assure the Note Holder that the taxes and insurance will be paid when due. The Note Holder may also require that you obtain private mortgage insurance on your loan. You may be required to pay the premium for this insurance with each regularly-scheduled loan payment.

- The payments for such taxes, hazard insurance, private mortgage insurance and other charges are commonly called escrow payments. The funds represented by these escrow payments are held by the Note Holder until the taxes, insurance premiums, or other charges are due, at which time the Note Holder will pay them on your behalf. You will be required to make the necessary escrow payments throughout the term of the loan.

- You will be provided an Initial Escrow Account Statement at loan settlement that (i) itemizes the estimated taxes, insurance premiums, and other charges that are reasonably anticipated to be paid during the first 12 months after settlement and (ii) sets out the anticipated due dates for payment of such charges from the escrow account. The initial required deposit at loan settlement will be an amount sufficient to pay all such estimated charges when due, calculated in compliance with applicable laws. This calculation will take into account the monthly escrow payments that you will make after settlement, and may include a permitted two-months reserve, or "cushion," equal to one-sixth (1/6th) of the total estimated amount of all such charges over the 12-month period, or a lesser cushion amount in compliance with applicable law.

- The Note Holder or servicer will send you an analysis of your escrow account each year with your Annual Escrow Account Statement. You will be notified in writing if the escrow amount is deficient and the extent of the deficiency. You may correct such deficiency by making a lump sum payment or by paying additional escrow amounts with your regular monthly payment.

- If an escrow account analysis discloses a surplus, the servicer shall, within 30 days from the date of the analysis, refund the surplus to the borrower if the surplus is greater than or equal to 50 dollars ($50). If the surplus is less than 50 dollars ($50), the servicer may refund such amount to the borrower, or credit such amount against the next year's escrow payments.

- If you fail to make the required escrow payments, Note Holder may apply all or a portion of your monthly payment of principal and interest toward the escrow payment. If your payments are insufficient to cover the required escrow payments, Note Holder may pay any taxes, insurance premiums, and other charges with its own funds to protect its security interest in the property securing your loan. Your failure to make the required escrow payments will give the Note Holder the right to call your loan immediately due and payable, and could result in a forced sale of your home.

Specific laws applicable in your state, or changes in laws, may require different or additional practices in connection with your escrow account. In that event, **the provisions of those laws will control,** instead of any inconsistent practice described in this document.

## EXAMPLE OF OPERATION OF THE LOAN

The example set out below is based on the following assumptions and shows how a loan described in the disclosure would operate. The margin contained in the example is a margin we have used recently; your margin may be different. **The Cap and Floor contained in this example are the highest recently offered under this program. Your Cap and/or Floor may be different.**

| | | | |
|---|---|---|---|
| Loan Amount: | $10,000.00 | Initial Interest Rate Change Cap: | 3.00% |
| Term of Loan: | 30 Years | Semi-annual Interest Rate Cap: | 1.00% |
| Payment Adjustment Frequency *: | 6 Months | Lifetime Interest Rate Change Cap: | 6.00% |
| Interest Adjustment Frequency *: | 6 Months | Lifetime Interest Rate Floor | 1% below initial rate; or the margin, whichever is greater |
| Margin: | 3.00% | | |

\* after initial adjustment at 24 months.

Index: *The six-month London Interbank Offered Rate ("LIBOR").*
Discount or Premium reflected in the following Example: 0%.

### Example: Calculating Minimum and Maximum Monthly Payments

Based on the assumptions shown above and an initial interest rate of 4.50 percent (the rounded sum equal to the margin plus the index in effect as of the first business day of the most recent day adjusted by the amount of any discount or premium) the maximum amount that the interest rate could rise under this program is six (6) percentage points, to 10.50 percent, and the monthly payment could rise from a first-year payment of $50.67 to a maximum of $89.00 in the 4th year. The periodic payment may increase or decrease substantially depending on changes in the interest rate. This maximum payment calculation reflects the highest periodic rate Cap (1% periodically/2% annually/3% at initial adjustment) and lifetime rate Cap (6%) recently offered by us with our Two-Year LIBOR ARMs. The Floor reflected in this maximum payment calculation is 1.00% below the initial rate.

In order to calculate the payment amount you would have to pay based on the interest rate shown above, divide the loan amount for which you intend to apply to $10,000 and multiply the resulting product by the minimum and maximum payment amounts shown above. (For example, the initial monthly payment for a mortgage amount of $60,000.00 would be: $60,000 divided by 10,000 = 6; 6 x $50.67 = $304.02 per month.)

*** IMPORTANT--Please sign one copy of this disclosure and return it to the Lender ***

I/We hereby acknowledge receipt of this ARM program disclosure notice and a copy of the Consumer Handbook on Adjustable Rate Mortgages.  Broker to supply Consumer Handbook on Adjustable Rate Mortgages.

Arita J. Wentz                                              _____
                                                            Date

_____              _____
                                                            Date

_____              _____
                                                            Date

_____              _____
                                                            Date

Page 3 of 3
Last modified 02.09.2004
SMI 2-Year Post 08.18.03 LIBOR ARM DISCLOSURE
96440893.uff

11878199

# RIDER TO NOTE

THIS RIDER TO NOTE (the "Note Rider") is made this **25TH of May, 2005,** and is incorporated into and shall be deemed to amend and supplement the Note made by the undersigned (the "Borrower") payable to **Saxon Mortgage, Inc.** (the "Lender") and dated as of even date herewith (the "Note"). I understand that the Lender may transfer the Note, the related security instrument (the "Security Instrument") and this Note Rider. The Lender or anyone who takes the Note, the Security Instrument, and this Note Rider by transfer and who is entitled to receive payments under the Note is called the "Note Holder."

In consideration of the Lender's agreement to provide the loan evidenced by the Note and as a material inducement to the Lender to grant such loan and the terms set forth in the Note, the undersigned agree that the following provision shall be effective, and that the Note shall contain and be subject to the following provision, notwithstanding any provision to the contrary contained in the Note, the security instrument securing the Note, or other loan document:

## PREPAYMENT PENALTY:

Payments of principal prior to the time they are due are known as "prepayments." When I make a prepayment, I will notify the Note Holder in writing that I am doing so.

If I make any prepayments prior to the **third** anniversary of the date of this Note, and the sum of the amounts of any such prepayments in any 12-month period exceeds 20% of the original principal amount of the loan evidenced by this Note, I will pay the Note Holder, in addition to the prepayments, an amount equal to one percent (1%) of the amount which is the principal balance of the loan at the time of such prepayment. This amount is called a "prepayment charge". On or after the **third** anniversary date of this Note, I may make full prepayment or partial prepayments without paying any prepayment charge.

The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due dates of my monthly payments unless the Note Holder agrees in writing to those changes. [If this Note provides for an adjustable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the Payment Change Date if my partial Prepayment occurs prior to the Payment Change Date. However, any reduction in the amount of my monthly payment due to my partial Prepayment may be offset by an interest rate increase.]

Any foregoing provision to the contrary notwithstanding, such prepayment penalty shall not exceed in amount, and the right to charge such prepayment penalty shall not remain in effect beyond, any limitations regarding amount or duration imposed by applicable law.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note Rider.

_____ (SEAL)
Arita J. Wantz                                                    Borrower

_____ (SEAL)
                                                                 Borrower

_____ (SEAL)
                                                                 Borrower

_____ (SEAL)
                                                                 Borrower

*[Sign Original Only.*
*Do Not Sign If Blanks In Text Are Not Filled In.]*

Sax Form R201OH
Rider-PPP-Ohio (07.01.03)
9644011.uff

Return To:
Stewart Mtg Svcs-Attn:Trail Docs

3910 Kirby Dr. Suite 300
Houston, Texas  77098



**EXHIBIT**

4

Loan Number:
11878199

———————————|Space Above This Line For Recording Data|———————————

## MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated May 25, 2005
together with all Riders to this document.
**(B) "Borrower"** is
Rita Ann Rich, A Married Woman,  and Arita J. Wentz, A Married Woman

Borrower is the mortgagor under this Security Instrument.
**(C) "Lender"** is
Saxon Mortgage, Inc.
Lender is a  corporation
organized and existing under the laws of  The State Of Virginia

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3036  1/01

-6(OH) (0201)
Page 1 of 15                    Initials: _____
VMP MORTGAGE FORMS - (800)521-7291

Lender's address is

4880 COX ROAD, Glen Allen, Virginia  23060

Lender is the mortgagee under this Security Instrument.

(D) "Note" means the promissory note signed by Borrower and dated May 25, 2005

The Note states that Borrower owes Lender

One Hundred Twenty Thousand and 00/100ths                                    Dollars

(U.S. $ $120,000.00         ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than June 1, 2035

(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."

(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.

(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| ☒ Arbitration Rider | | Tax Service Rider |

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.

(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.

(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.

(K) "Escrow Items" means those items that are described in Section 3.

(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.

(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.

(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

(P) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the **county**                                    of **Preble**                                    :
          [Type of Recording Jurisdiction]                          [Name of Recording Jurisdiction]
**See Schedule A attached hereto and made a part hereof.**

Parcel ID Number:                                          which currently has the address of
**1117 N Maple Street**                                                                [Street]
**Eaton**                                          [City], Ohio **45320**          [Zip Code]
("Property Address"):

     TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
     BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
     THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this

-6(OH) (0201)                    Page 3 of 15          Initials: _____          Form 3036  1/01

Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

 -6(OH) (0201)                      Page 4 of 15                 Initials: _____             Form 3036  1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

-6(OH) (9201)                         Page 6 of 15         Initials: _____          Form 3036   1/01

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

-6(OH) (0201)                     Page 9 of 15             Initials: _____        Form 3036   1/01

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

VMP -6(OH) (0201)    Page 11 of 15    Initials: _____    Form 3036  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

 -6(OH) (0201)                    Page 12 of 15            Initials:_____            Form 3036   1/01

NON UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, **Preble** County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this Section 24 to acknowledge, affirm and comply with the provision of Section 5301.233 of the Revised Code of Ohio.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this
Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____     _____ (Seal)
                                     Arita J. Wentz              -Borrower


_____     _____ (Seal)
                                     Rita Ann Rich               -Borrower


_____ (Seal)      _____ (Seal)
                       -Borrower                                -Borrower


_____ (Seal)      _____ (Seal)
                       -Borrower                                -Borrower


_____ (Seal)      _____ (Seal)
                       -Borrower                                -Borrower

STATE OF OHIO,                                        County ss:

    This instrument was acknowledged before me this 25TH      of May, 2005                    , by
Arita J. Wentz and Rita Ann Rich


My Commission Expires:                          _____
                                                Notary Public



                                                This instrument was prepared by
                                                Saxon Mortgage, Inc.


    -6(OH) (0201)                    Page 15 of 15        Initials: _____        Form 3036  1/01

## ARBITRATION RIDER

THIS RIDER is made this **25TH** day of **May, 2005** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the Undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **Saxon Mortgage, Inc.** (the "Lender") of the same date and encumbering the property described in the Security Instrument and located at:

**1117 N Maple Street
Eaton, Ohio 45320**

*[Property Address]*

As used in this Rider the term "Lender" includes Lender's successors and assigns,  the company servicing the Note on Lender's behalf (the "Servicer"), any mortgage broker involved in the origination of the mortgage loan evidenced by the Note and Security Instrument, and any settlement agent, escrow agent or closing attorney involved in the settlement of the mortgage loan evidenced by the Note and Security Instrument.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** All disputes, claims, or controversies arising from or related to the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided under "Exclusions from Arbitration" below. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-14). In any arbitration hereunder, the arbitrator shall be appointed by, and the arbitration conducted pursuant to the rules of procedure of, any one of the following arbitration service providers as shall be selected by the party initiating such arbitration: National Arbitration Forum or American Arbitration Association. However, if any law applicable to the Loan requires mortgage lenders to engage, or would otherwise impose enhanced regulatory restrictions on mortgage lenders to engage, any particular arbitration service provider, the parties agree to engage such specified provider. Any arbitration hearing shall be conducted within the Federal judicial district in which the Property is located, or within such other or more limited area as required by any applicable law. The arbitrator shall set forth in the award findings of fact and conclusions of law supporting the decision, which  must be based on applicable law and supported by substantial evidence presented in the proceeding. Judgment upon the award may be entered by any court of competent jurisdiction. All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender.

**FEES OF ARBITRATOR.**  In any arbitration that pertains solely to the Loan, Borrower shall not be required to pay more than $125 in initial filing fees to the arbitrator.  The Lender shall pay any balance of such initial fees.  In addition, the Lender shall pay all other fees and costs of the arbitration.  In no event shall either party be responsible for any fees or expenses of any of the other party's attorneys, witnesses, or consultants, or any other expenses, for which such other party reasonably would have been expected to be liable had such other party initiated a suit in the courts of the jurisdiction in which the Borrower resides regarding a similar dispute.

**EXCLUSION FROM ARBITRATION.**  This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lenders' Rights in the Property" contained in this Security Instrument, or (c) exercise of the right under the terms of this Security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein.  Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes".  Any dispute that could otherwise have been asserted as a counterclaim or grounds for relief in such a judicial proceeding shall be resolved solely in accordance with the section entitled "Arbitration of Disputes".

**WAIVER:  In the event your loan or an interest in your loan is transferred or sold to Freddie Mac or Fannie Mae, this Arbitration rider shall be void and cannot be reinstated by Lender or a subsequent holder or servicer of your loan.  In the event of a transfer or sale to Freddie Mac or Fannie Mae, neither Lender nor any subsequent holder or servicer of your loan shall require you to submit to arbitration to resolve any dispute arising out of or relating in any way to your loan.  Lender or Lender's designee shall provide you with written notice in the event of a sale or transfer of your loan or an interest in your loan to Freddie Mac or Fannie Mae within sixty (60) days of such sale or transfer by Lender or an affiliate of Lender.**

No provision of this agreement shall limit the right of Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate".

Page 2 of 3
Saxon Arbitration Rider (11/01/2004)
c-23774.41
96440052.uff\Arbitration Rider\Modified 02.28.05

**NOTICE:** BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS DESCRIBED IN THE 'ARBITRATION OF DISPUTES' SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL. DISCOVERY IN ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.

THIS IS A VOLUNTARY ARBITRATION AGREEMENT.  IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

_____ — *Borrower*
Arita J. Wentz

_____ — *Borrower*
Rita Ann Rich

_____ — *Borrower*

_____ — *Borrower*

Page 3 of 3
Saxon Arbitration Rider (11/01/2004)
(07-11-97) c-23774-41
96440053.uff\Arbitration Rider\Modified 02.28.05

11882694



# BALLOON NOTE
(Fixed Rate)

**THIS LOAN IS PAYABLE IN FULL AT MATURITY. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.**

May 25, 2005                    Dublin                    , Ohio
    [Date]                      [City]                    [State]
1117 N Maple Street
Eaton, Ohio  45320
                          [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $30,000.00          (this amount is called "principal"), plus interest, to the order of the Lender. The Lender is
Saxon Mortgage, Inc.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of principal has been paid. I will pay interest at a yearly rate of 11.275     %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making payments every month.

I will make my monthly payments on the 1ST          day of each month beginning on July 1ST          ,
2005        . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. My monthly payments will be applied to interest before principal. If, on June 1, 2025          , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 4880 Cox Road, Glen Allen, Virginia 23060
                                              or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 291.95

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of principal at any time before they are due. A payment of principal only is known as a "prepayment." When I make a prepayment, I will tell the Note Holder in writing that I am doing so.

I may make a full prepayment or partial prepayments without paying any prepayment charge. The Note Holder will use all of my prepayments to reduce the amount of principal that I owe under this Note. If I make a partial prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

MULTISTATE BALLOON FIXED RATE NOTE - Single Family - FNMA UNIFORM INSTRUMENT                    Form 3260 3/87
 -870T (9405)                                    Page 1 of 3
                            VMP MORTGAGE FORMS - (800)521-7291                    Initials: _____

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the principal I owe under this Note or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is delivered or mailed to me.

**(D) No Waiver by Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____(Seal)
Areta J. Wentz                                         -Borrower

_____(Seal)
                                                       -Borrower

_____(Seal)
                                                       -Borrower

_____(Seal)
                                                       -Borrower

*(Sign Original Only)*

-870T (9408)                          Page 3 of 3                          Form 3260 3/87

# BALLOON PAYMENT RIDER
# TO MORTGAGE/DEED OF TRUST
*[30-Year Amortization - Unpaid Balance Due In Full In 20 Years]*

THIS RIDER is made this 25TH      day of  May, 2005      , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Note (the "Note") to Saxon Mortgage, Inc.      (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

**1117 N Maple Street**
**Eaton, Ohio  45320**

*[Property Address]*

Borrower understands that the Note may be transferred by Lender and by Lender's successors and assigns. The beneficial owner of the Note from time to time is included within the term "Lender."

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

BALLOON PAYMENT NOTICE: This loan is payable in full at the "Maturity Date" stated in the Note. Borrower must repay the entire principal balance of the loan and unpaid interest then due. Lender is under no obligation to refinance the loan at that time. Borrower will, therefore, be required to make payment out of other assets that Borrower may own, or Borrower will have to find a lender, which may be the lender that Borrower has this loan with, willing to lend the money. If Borrower refinances this loan at maturity, Borrower may have to pay some or all of the closing costs normally associated with a new loan even if Borrower obtains refinancing from the same Lender.

Page 1 of 2
30/20 Balloon Rider to Mortgage/Deed of Trust
(02.12.04)
96440031.uff\3020BalloonRider-DOT\Last modified 03.25.04

THIS LOAN HAS A BALLOON FEATURE, MEANING THAT THE MATURITY DATE OCCURS AT THE <u>240th</u> MONTHLY PAYMENT DUE DATE. THEREFORE, IT IS ANTICIPATED THAT A SUBSTANTIAL UNPAID PRINCIPAL BALANCE WILL REMAIN WHICH BORROWER MUST PAY IN FULL AT THAT TIME.

BY SIGNING BELOW, Borrower acknowledges agreement to the specific provisions of the Note as described in this Note Rider.

_____ (SEAL)
Areta J. Wentz                            Borrower

_____ (SEAL)
Rita Ann Rich                             Borrower

_____ (SEAL)
                                          Borrower

_____ (SEAL)
                                          Borrower

*[Sign Original Only.  Do Not Sign If Blanks In Text Are Not Filled In.]*

Page 2 of 2
30/20 Balloon Rider to Mortgage/Deed of Trust
(02.12.04)
96440032.uff\3020BalloonRider-DOT\Last modified 03.25.04

## ADDENDUM TO LOAN APPLICATION

### BALLOON FEATURES

THIS LOAN MUST EITHER BE PAID IN FULL AT MATURITY OR REFINANCED TO A MARKET LEVEL FIXED-RATE MORTGAGE. YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE IF YOU DO NOT QUALIFY FOR THE CONDITIONAL RIGHT TO REFINANCE AS SPECIFIED IN THE NOTE ADDENDUM AND MORTGAGE RIDER. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN IF QUALIFICATION CONDITIONS ARE NOT MET. YOU WILL, THEREFORE, BE REQUIRED TO MAKE PAYMENT OUT OF OTHER ASSETS THAT YOU MAY OWN, OR YOU WILL HAVE TO FIND A LENDER, WHICH MAY BE THE LENDER YOU HAVE THIS LOAN WITH, WILLING TO LEND YOU THE MONEY. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

_____
Date

_____

_____

_____

_____

Instruction to Lender:   A copy of this Notice  must be given to the mortgagor(s) at application.  You should retain a signed copy in the origination file.

**BALLOON PAYMENT RIDER**
**TO NOTE**

*[30-Year Amortization- Unpaid Balance Due In Full In 20 Years]*

THIS RIDER TO NOTE is made this 25TH        day of May            , 2005      ,
and is incorporated into and shall be deemed to amend and supplement the Note made
by the undersigned (the "Borrower") payable to the order of Saxon Mortgage, Inc.
(the "Lender") and dated as of the same date as this Rider (the "Note").  I understand that the
Lender may transfer the Note, the related mortgage, deed of trust, or other security instrument, and
this Note Rider. The Lender or anyone who takes the Note, the Security Instrument, and this Note
Rider by transfer and who is entitled to receive payments under the Note is included in the term
"Lender"

BALLOON PAYMENT NOTICE: This loan is payable in full at the "Maturity Date"
stated in the Note. You must repay the entire principal balance of the loan and unpaid
interest then due.  The Lender is under no obligation to refinance the loan at that time.
You will, therefore, be required to make payment out of other assets that you may own, or
you will have to find a lender, which may be the lender you have this loan with, willing to
lend you the money.  If you refinance this loan at maturity, you may have to pay some or
all of the closing costs normally associated with a new loan even if you obtain refinancing
from the same Lender.

THIS LOAN HAS A BALLOON FEATURE , MEANING THAT THE MATURITY
DATE OCCURS AT THE 240th MONTHLY PAYMENT DUE DATE.  THEREFORE,
IT IS ANTICIPATED THAT A SUBSTANTIAL UNPAID PRINCIPAL BALANCE
WILL REMAIN WHICH YOU MUST PAY IN FULL AT THAT TIME.

BY SIGNING BELOW, Borrower acknowledges agreement to the specific provisions of
the Note as described in this Note Rider.

_____  *(SEAL)*
Areta J. Wentz                                                  *Borrower*

_____  *(SEAL)*
                                                                       *Borrower*

_____  *(SEAL)*
                                                                       *Borrower*

_____  *(SEAL)*
                                                                       *Borrower*

*[Sign Original Only.  Do Not Sign If Blanks In Text Are Not Filled In.]*

Page 1 of 1
30/20 Balloon Rider to Note
(02.12.04)
96440733 uff03/020BalloonRider-NT\Last modified 03.24.04

EXHIBIT

11882694

## MORTGAGE

THIS MORTGAGE is made this 25TH            day of May            , 2005        , between the Mortgagor,
Rita Ann Rich, A Married Woman, and Areta J. Wentz, A Married Woman

                                                                    (herein "Borrower"), whose current
mailing address is 1117 N Maple Street
Eaton, Ohio  45320                                                                    and the Mortgagee,
Saxon Mortgage, Inc.

                                                                    , a corporation organized and
existing under the laws of The State Of Virginia                                        , whose address is
4880 COX ROAD
Glen Allen, Virginia  23060                                        (herein "Lender").
     WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $30,000.00        , which
indebtedness is evidenced by Borrower's note dated May 25, 2005                and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not
sooner paid, due and payable on June 1, 2025        .
     TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with the interest thereon, the payment
of all other sums, with the interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey
to Lender the following described property located in the County of Preble
State of Ohio:
See Schedule A attached hereto and made a part hereof.

which has the address of 1117 N Maple Street                                    , Eaton
                                        [Street]                                    [City]
Ohio    45320                                    (herein "Property Address");
            [ZIP Code]

     TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances
and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the
foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as
the "Property."
     Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and
convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of
record.
     UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
     1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness
evidenced by the Note and late charges as provided in the Note.
     2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to
Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum
(herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit
development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus
one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage
insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and
reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that
Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

| OHIO - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT |

                                                                    Form 3836
                                                                    Amended 4/57

76(OH) (9704)
Page 1 of 4                                                Initials _____
            VMP MORTGAGE FORMS - (800)521-7291

If Borrower pays Funds to Lender, the Funds shall be held in an institution the deposits or accounts of which are insured or guaranteed by a federal or state agency (including Lender if Lender is such an institution). Lender shall apply the Funds to pay said taxes, assessments, insurance premiums and ground rents. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Borrower and Lender may agree in writing at the time of execution of this Mortgage that interest on the Funds shall be paid to Borrower, and unless such agreement is made or applicable law requires such interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Mortgage.

If the amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, insurance premiums and ground rents, shall exceed the amount required to pay said taxes, assessments, insurance premiums and ground rents as they fall due, such excess shall be, at Borrower's option, either promptly repaid to Borrower or credited to Borrower on monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments, insurance premiums and ground rents as they fall due, Borrower shall pay to Lender any amount necessary to make up the deficiency in one or more payments as Lender may require.

Upon payment in full of all sums secured by this Mortgage, Lender shall promptly refund to Borrower any Funds held by Lender. If under paragraph 17 hereof the Property is sold or the Property is otherwise acquired by Lender, Lender shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Mortgage.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under the Note and paragraphs 1 and 2 hereof shall be applied by Lender first in payment of amounts payable to Lender by Borrower under paragraph 2 hereof, then to interest payable on the Note, and then to the principal of the Note.

**4. Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

**5. Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

**6. Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

**7. Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon, at the Note rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

**8. Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefor related to Lender's interest in the Property.

**9. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

**10. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

**11. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

**12. Notice.** Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property Address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

**13. Governing Law; Severability.** The state and local laws applicable to this Mortgage shall be the laws of the jurisdiction in which the Property is located. The foregoing sentence shall not limit the applicability of federal law to this Mortgage. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs," "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

**14. Borrower's Copy.** Borrower shall be furnished a conformed copy of the Note and of this Mortgage at the time of execution or after recordation hereof.

**15. Rehabilitation Loan Agreement.** Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

**16. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Mortgage. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Mortgage.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Mortgage. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Mortgage without further notice or demand on Borrower.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, reasonable attorneys' fees, court costs, and costs of documentary evidence, abstracts and title reports.**

**18. Borrower's Right to Reinstate.** Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorneys' fees; and (d) Borrower takes such action as Lender may reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

**19. Assignment of Rents; Appointment of Receiver.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender shall be entitled to have a receiver appointed by a court to enter upon, take possession of and manage the Property and to collect the rents of the Property, including those past due. All rents collected by the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. The receiver shall be liable to account only for those rents actually received.

**20. Release.** Upon payment of all sums secured by this Mortgage, Lender shall discharge this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

**21. Advances to Protect Security.** Disbursements made by Lender pursuant to paragraph 7 hereof, such as those for the payment of taxes, assessments, insurance premiums or costs incurred for the protection of the Property, shall be advances made pursuant to Section 5301.233 of the Ohio Code.

REQUEST FOR NOTICE OF DEFAULT
——————AND FORECLOSURE UNDER SUPERIOR——————
MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witnesses:

_____      _____ (Seal)
     Areta J. Wentz      -Borrower

_____      _____ (Seal)
     Rita Ann Rich      -Borrower

     _____ (Seal)
     -Borrower

     _____ (Seal)
     -Borrower
     *(Sign Original Only)*

STATE OF OHIO,                        **County ss:**

On this **25TH** day of **May** , **2005** , before me, a Notary Public in and for said County and State, personally appeared _or appeared by their lawful attorney-in-fact,_ **Areta J. Wentz and Rita Ann Rich**

_his/her/they_ did examine and read the same and did sign the foregoing instrument, and that the same is _his/her/their_ free act and deed.

IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires: _____

     _____
     Notary Public

Prepared by: **Saxon Mortgage, Inc.**

Record & Return to:
**Stewart Mtg Svcs-Attn:Trail Docs
3910 Kirby Dr. Suite 300
Houston, Texas 77098**

# ARBITRATION RIDER

THIS RIDER is made this **25TH** day of **May, 2005** and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the Undersigned (the "Borrower") to secure Borrower's Note (the "Note") to **Saxon Mortgage, Inc.** (the "Lender") of the same date and encumbering the property described in the Security Instrument and located at:

**1117 N Maple Street
Eaton, Ohio  45320**

*[Property Address]*

As used in this Rider the term "Lender" includes Lender's successors and assigns, the company servicing the Note on Lender's behalf (the "Servicer"), any mortgage broker involved in the origination of the mortgage loan evidenced by the Note and Security Instrument, and any settlement agent, escrow agent or closing attorney involved in the settlement of the mortgage loan evidenced by the Note and Security Instrument.

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**ARBITRATION OF DISPUTES.** All disputes, claims, or controversies arising from or related to the loan evidenced by the Note (the "Loan"), including statutory claims, shall be resolved by binding arbitration, and not by court action, except as provided **under** "Exclusions from Arbitration" below. This arbitration agreement is made pursuant to a transaction involving interstate commerce, and shall be governed by the Federal Arbitration Act (9 U.S.C. §§ 1-14). In any arbitration hereunder, the arbitrator shall be appointed by, and the arbitration conducted pursuant to the rules of procedure of, any one of the following arbitration service providers as shall be selected by the party initiating such arbitration: National Arbitration Forum or American Arbitration Association. However, if any law applicable to the Loan requires mortgage lenders to engage, or would otherwise impose enhanced regulatory restrictions on mortgage lenders to engage, any particular arbitration service provider, the parties agree to engage such specified provider. Any arbitration hearing shall be conducted within the Federal judicial district in which the Property is located, or within such other or more limited area as required by any applicable law. The arbitrator shall set forth in the award findings of fact and conclusions of law supporting the decision, which must be based on applicable law and supported by substantial evidence presented in the proceeding. Judgment upon the award may be entered by any court of competent jurisdiction. All disputes subject to arbitration under this agreement shall be arbitrated individually, and shall not be subject to being joined or combined in any proceeding with any claims of any persons or class of persons other than Borrower or Lender.

Page 1 of 3
Saxon Arbitration Rider (11/01/2004)
C-23774-41
96440051.uff\Arbitration Rider\Modified 02.28.05

**FEES OF ARBITRATOR.**  In any arbitration that pertains solely to the Loan, Borrower shall not be required to pay more than $125 in initial filing fees to the arbitrator.  The Lender shall pay any balance of such initial fees.  In addition, the Lender shall pay all other fees and costs of the arbitration.  In no event shall either party be responsible for any fees or expenses of any of the other party's attorneys, witnesses, or consultants, or any other expenses, for which such other party reasonably would have been expected to be liable had such other party initiated a suit in the courts of the jurisdiction in which the Borrower resides regarding a similar dispute.

**EXCLUSION FROM ARBITRATION.**  This agreement shall not limit the right of Lender to (a) accelerate or require immediate payment in full of the secured indebtedness or exercise the other Remedies described in this Security Instrument before, during, or after any arbitration, including the right to foreclose against or sell the Property; (b) exercise the rights set forth in the Uniform Covenant labeled "Protection of Lenders' Rights in the Property" contained in this Security Instrument, or (c) exercise of the right under the terms of this Security Instrument to require payment in full of the indebtedness upon a transfer of the Property or a beneficial interest therein. Should Borrower appear in and contest any judicial proceeding initiated by Lender under this Exclusion, or initiate any judicial proceeding to challenge any action authorized by this Exclusion, without asserting any counterclaim or seeking affirmative relief against Lender, then upon request of Borrower such judicial proceedings shall be stayed or dismissed, and the matter shall proceed to arbitration in accordance with the section entitled "Arbitration of Disputes".  Any dispute that could otherwise have been asserted as a counterclaim or grounds for relief in such a judicial proceeding shall be resolved solely in accordance with the section entitled "Arbitration of Disputes".

**WAIVER: In the event your loan or an interest in your loan is transferred or sold to Freddie Mac or Fannie Mae, this Arbitration rider shall be void and cannot be reinstated by Lender or a subsequent holder or servicer of your loan.  In the event of a transfer or sale to Freddie Mac or Fannie Mae, neither Lender nor any subsequent holder or servicer of your loan shall require you to submit to arbitration to resolve any dispute arising out of or relating in any way to your loan. Lender or Lender's designee shall provide you with written notice in the event of a sale or transfer of your loan or an interest in your loan to Freddie Mac or Fannie Mae within sixty (60) days of such sale or transfer by Lender or an affiliate of Lender.**

No provision of this agreement shall limit the right of Borrower to exercise Borrower's rights under the Uniform Covenant labeled "Borrower's Right to Reinstate".

Page 2 of 3
Saxon Arbitration Rider (11/01/2004)
c-23774-41
96440052.uff\Arbitration Rider\Modified 02.28.05

     **NOTICE:** BY SIGNING THIS ARBITRATION RIDER YOU ARE AGREEING TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS DESCRIBED IN THE 'ARBITRATION OF DISPUTES' SECTION ABOVE DECIDED EXCLUSIVELY BY ARBITRATION, AND YOU ARE GIVING UP ANY RIGHTS YOU MIGHT HAVE TO LITIGATE DISPUTES IN A COURT OR JURY TRIAL. DISCOVERY IN ARBITRATION PROCEEDINGS MAY BE LIMITED BY THE RULES OF PROCEDURE OF THE SELECTED ARBITRATION SERVICE PROVIDER.

     THIS IS A VOLUNTARY ARBITRATION AGREEMENT. IF YOU DECLINE TO SIGN THIS ARBITRATION AGREEMENT, LENDER WILL NOT REFUSE TO COMPLETE THE LOAN TRANSACTION BECAUSE OF YOUR DECISION.

BY SIGNING BELOW, Borrower accepts and agrees to the provisions contained in this Rider.

_____ _____ *Borrower*
Areta J. Wentz

_____ _____ *Borrower*
Rita Ann Rich

_____ _____ *Borrower*

_____ _____ *Borrower*

Page 3 of 3
Saxon Arbitration Rider (11/01/2004)
(07-11-97) c-23774-41
96440053.uff\Arbitration Rider\Modified 02.28.05

Instrument
200500062023 OR
Book Page
232 2109

Return To:
Stewart Mtg Svcs-Attn:Trail Docs

3910 Kirby Dr. Suite 300
Houston, Texas 77098

200500062023
Filed for Record in
PREBLE COUNTY, OHIO
WILLIAM SPAHR
06-03-2005 At 12:49 pm.
MORTGAGE        164.00
OR Book  232 Page 2109 ~ 2127

Loan Number:
11878199

———————————————— [Space Above This Line For Recording Data] ————————————————

## MORTGAGE



EXHIBIT

7

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in
Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are
also provided in Section 16.

(A) "Security Instrument" means this document, which is dated May 25, 2005
together with all Riders to this document.

(B) "Borrower" is
Rita Ann Rich, A Married Woman,   and Arita J. Wantz, A Married Woman

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is
Saxon Mortgage, Inc.
Lender is a  corporation
organized and existing under the laws of  The State Of Virginia

OHIO-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                Form 3036 1/01

-6(OH) (0201)

Page 1 of 15                Initials:_____

VMP MORTGAGE FORMS - (800)521-7291

*a g w*
*x q r*

STATE OF OHIO, COUNTY OF PREBLE, SS:
    I William J Spahr, THE DULY ELECTED, QUALIFIED AND ACTING
COUNTY RECORDER WITHIN AND FOR SAID COUNTY AND IN WHOSE CUSTODY THE
FILES AND RECORDS OF SAID OFFICE ARE REQUIRED BY THE LAWS OF THE
STATE OF OHIO TO BE KEPT, DO HEREBY CERTIFY THAT THE FOREGOING COPY
OF Mortgage NO. IS 62023 TAKEN AND COPIED FROM RECORD OF Official Record
NO. 232 PAGE 2109 OF SAID OFFICE, THAT IT HAS BEEN COMPARED BY ME WITH
THE ORIGINAL RECORD AND THAT IT IS A TRUE AND CORRECT COPY THEREOF.
    WITNESS MY SIGNATURE AND THE SEAL OF SAID OFFICE THIS 3rd DAY
OF August 2007.

William J Spahr , RECORDER
WILLIAM J. SPAHR, RECORDER, PREBLE COUNTY, OHIO

Requested By: jjj 08/31/2007

Instrument
200500062023  OR

Book Page
232 2123

STATE OF OHIO,

Preble  County ss:

This instrument was acknowledged before me this 25TH

of May, 2005                  , by

Arita J. Wentz and Rita Ann Rich  H;W



My Commission Expires:

Deborah L. Kistner
NOTARY PUBLIC - STATE OF OHIO
Section 147.03 R.C.
Commission expires 7/14/07

This instrument was prepared by
Saxon Mortgage, Inc.

-6(OH) (0201)                    Page 15 of 15          Initials: _____          Form 3036  1/01

200500062024
OR 232 2128

200500062024
Filed for Record in
PREBLE COUNTY, OHIO
WILLIAM SPAHR
06-03-2005 At 12:49 pm.
MORTGAGE          76.00
OR Book 232 Page 2128 - 2135

11882694

## MORTGAGE

**EXHIBIT**

**8**

THIS MORTGAGE is made this 25TH          day of May          , 2005          , between the Mortgagor,
**Rita Ann Rich, A Married Woman,  and Arata J. Wentz, A Married Woman**

(herein "Borrower"), whose current
mailing address is **1117 N Maple Street**
**Eaton, Ohio  45320**                                                                     and the Mortgagee,
**Saxon Mortgage, Inc.**
                                                                      , a corporation organized and
existing under the laws of **The State Of Virginia**                                      , whose address is
**4880 COX ROAD**
**Glen Allen, Virginia  23060**                                             (herein "Lender").
    WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $30,000.00                    , which
indebtedness is evidenced by Borrower's note dated May 25, 2005                         and extensions and renewals
thereof (herein "Note"), providing for monthly installments of principal and interest, with the balance of the indebtedness, if not
sooner paid, due and payable on June 1, 2025          .
    TO SECURE to Lender the repayment of the indebtedness evidenced by the Note, with the interest thereon, the payment
of all other sums, with the interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and the
performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey
to Lender the following described property located in the County of Preble
State of Ohio:
**See Schedule A attached hereto and made a part hereof.**

which has the address of **1117 N Maple Street**                                       , **Eaton**
                                        [Street]                                                [City]
**Ohio  45320**                                     (herein "Property Address");
                [ZIP Code]

    TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances
and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the
foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as
the "Property."
    Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and
convey the Property, and that the Property is unencumbered, except for encumbrances of record. Borrower covenants that
Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of
record.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. Payment of Principal and Interest. Borrower shall promptly pay when due the principal and interest indebtedness
evidenced by the Note and late charges as provided in the Note.
    2. Funds for Taxes and Insurance. Subject to applicable law or a written waiver by Lender, Borrower shall pay to
Lender on the day monthly payments of principal and interest are payable under the Note, until the Note is paid in full, a sum
(herein "Funds") equal to one-twelfth of the yearly taxes and assessments (including condominium and planned unit
development assessments, if any) which may attain priority over this Mortgage and ground rents on the Property, if any, plus
one-twelfth of yearly premium installments for hazard insurance, plus one-twelfth of yearly premium installments for mortgage
insurance, if any, all as reasonably estimated initially and from time to time by Lender on the basis of assessments and bills and
reasonable estimates thereof. Borrower shall not be obligated to make such payments of Funds to Lender to the extent that
Borrower makes such payments to the holder of a prior mortgage or deed of trust if such holder is an institutional lender.

OHIO - SECOND MORTGAGE - 1/80 - FNMA/FHLMC UNIFORM INSTRUMENT                    Form 3836
                                                                          Amended 4/87

-76(OH) (8764)
Page 1 of 4                          Initials:
    VMP MORTGAGE FORMS - (800)521-7291

STATE OF OHIO, COUNTY OF PREBLE, SS:
    I, _William J Spahr_ , THE DULY ELECTED, QUALIFIED AND ACTING
COUNTY RECORDER WITHIN AND FOR SAID COUNTY AND IN WHOSE CUSTODY THE
FILES AND RECORDS OF SAID OFFICE ARE REQUIRED BY THE LAWS OF THE
STATE OF OHIO TO BE KEPT, DO HEREBY CERTIFY THAT THE FOREGOING COPY
OF _Mortgage_ NO. IS _6204_ TAKEN AND COPIED FROM RECORD OF _Official Record_
NO. _232_ PAGE _2128_ OF SAID OFFICE, THAT IT HAS BEEN COMPARED BY ME WITH
THE ORIGINAL RECORD AND THAT IT IS A TRUE AND CORRECT COPY THEREOF.
    WITNESS MY SIGNATURE AND THE SEAL OF SAID OFFICE THIS _31st_ DAY
OF _August_ , _2007_.

                              _William J Spahr_          , RECORDER
                        WILLIAM J. SPAHR, RECORDER, PREBLE COUNTY, OHIO

Instrument
200500062024 OR   Book Page
232 2131

21. **Advances to Protect Security.** Disbursements made by Lender pursuant to paragraph 7 hereof, such as those for the payment of taxes, assessments, insurance premiums or costs incurred for the protection of the Property, shall be advances made pursuant to Section 5301.233 of the Ohio Code.

## REQUEST FOR NOTICE OF DEFAULT
## AND FORECLOSURE UNDER SUPERIOR
## MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give Notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

IN WITNESS WHEREOF, Borrower has executed this Mortgage.

Witnesses:

_____        _Areta J. Wentz_____ (Seal)
                                 Areta J. Wentz          -Borrower

_____        _Rita A. Rich_____ (Seal)
                                 Rita Ann Rich           -Borrower

                                _William J. Rich_____ (Seal)
                                                         -Borrower

                                _____ (Seal)
                                                         -Borrower
                                            (Sign Original Only)

STATE OF OHIO,                        Preble County ss:

On this 25TH     day of May          , 2005      , before me, a Notary Public in and for said County
and State, personally appeared   , or appeared by their lawful attorney-in-fact,
**Areta J. Wentz and Rita Ann Rich** , H ; W

, the individual(s) who executed the foregoing instrument and acknowledged that
he/she/they   did examine and read the same and did sign the foregoing instrument, and that the same is his/her/their
free act and deed.
IN WITNESS WHEREOF, I have hereunto set my hand and official seal.

My Commission Expires:

Prepared by: **Saxon Mortgage, Inc.**

Record & Return to:
**Stewart Mtg Svcs-Attn:Trail Docs
3910 Kirby Dr. Suite 300
Houston, Texas  77098**

Deborah L. Kistner
NOTARY PUBLIC - STATE OF OHIO
Section 147.03 R.C.
Commission expires 7/14/07

-76(OH) (9704)          Page 4 of 4                    Form 3836

HUD-1A  OMB NO. 2502-0491

A.   U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT
### SETTLEMENT STATEMENT
Optional Form for Transactions without Sellers

**EXHIBIT**

9

| NAME AND ADDRESS OF BORROWER: | NAME AND ADDRESS OF LENDER: |
|---|---|
| ARETA J. WENTZ<br>1117 NORTH MAPLE STREET<br>EATON,OHIO 45320 | SAXON MORTGAGE, INC.<br>4880 COX ROAD<br>GLEN ALLEN, VIRGINIA 23060 |

| PROPERTY LOCATION:<br>1117 NORTH MAPLE STREET<br>EATON, OH 45320<br>PREBLE County, Ohio | |
|---|---|
| | SETTLEMENT AGENT:    Priority Land Title Agency |
| | PLACE OF SETTLEMENT: 655 Metro Place South<br>                        Dublin, Ohio 43017 |
| | SETTLEMENT DATE:    May 25, 2005        Disburse:05/31/05 |
| | LOAN NUMBER:    11882694 |

| L.   SETTLEMENT CHARGES | | M.  DISBURSEMENT TO OTHERS | |
|---|---|---|---|
| 800.  ITEMS PAYABLE IN CONNECTION WITH LOAN | | 1501. SHORT TO CLOSE 1ST MT to<br>PRIORITY LAND TITLE | 28,779.97 |
| 801. Loan Origination      % to | | 1502. | |
| 802. Loan Discount         % to | | | |
| 803. Appraisal Fee             to | | 1503. | |
| 804. Credit Report             to | | | |
| 805. Lender's Inspection Fee  to | | 1504. | |
| 806. Mortgage Ins. App. Fee   to | | | |
| 807. Mortgage Broker Fee      to | | 1505. | |
| 808. FLOOD CERT FEE    to FIDELITY NATIONAL | 14.00 | | |
| 809. | | 1506. | |
| 810. | | | |
| 811. | | 1507. | |
| 812. | | | |
| 813. | | 1508. | |
| 814. | | | |
| 815. | | 1509. | |
| 816. | | | |
| 817. | | 1510. | |
| 818. | | | |
| 819. | | 1511. | |
| 820. | | | |
| 900.  ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | 1512. | |
| 901. Interest  05/31/05  to  06/01/05  @ $      9.270000/day | 9.27 | | |
| 902. Mortgage Insurance Prem for        months to | | 1513. | |
| 903. Hazard Insurance Prem for    1.0 yr to | | | |
| 904. | | 1514. | |
| 905. | | | |
| 1000.  RESERVES DEPOSITED WITH LENDER | | | |
| 1001. Hazard Insurance       months @ $       per month | | 1520.  TOTAL DISBURSED<br>       (enter on line 1603) | 28,779.97 |
| 1002. Mortgage Insurance     months @ $       per month | | | |
| 1003. City/Town Taxes        months @ $       per month | | | |
| 1004. County Taxes           months @ $       per month | | | |
| 1005. Assessments            months @ $       per month | | | |
| 1006.                        months @ $       per month | | | |
| 1007.                        months @ $       per month | | | |
| 1008.                        months @ $       per month | 0.00 | | |
| 1100.  TITLE CHARGES | | | |
| 1101. Settlement Fee         to Priority Land Title Agency | 100.00 | | |
| 1102. Title Search           to | | | |
| 1103. Title Examination      to | | | |
| 1104. Title Ins. Binder      to Priority Land Title Agency | | | |
| 1105. Document Prep.         to | 50.00 | | |
| 1106. Notary Fees            to | | | |
| 1107. Attorney's Fees        to | | | |
|        (includes above item numbers:                    ) | | | |
| 1108. Title Insurance    to PRIORITY LAND TITLE AGENCY | 125.00 | | |
|        (includes above item numbers:                    ) | | | |
| 1109. Lender's Coverage  $         30,000.00 | | | |
| 1110. Owner's Coverage   $ | | N.   NET SETTLEMENT | |
| 1111. EPA ENDORSEMENT       to Priority Land Title Agency | 75.00 | | |
| 1112. SURVEY ENDORSEMENT    to Priority Land Title Agency | 50.00 | | |
| 1113. COMP ENDORSEMENT      to Priority Land Title Agency | 150.00 | | |
| 1114. | | 1600.  Loan Amount | $    30,000.00 |
| 1115. | | | |
| 1116. | | | |
| 1117. | | 1601.  Plus Cash/Check from | $        0.00 |
| 1118. | | Borrower | |
| 1200.  GOVERNMENT RECORDING AND TRANSFER CHARGES | | | |
| 1201. Recording fees: Mortgage $    84.00 ; Releases $ | 84.00 | 1602.  Minus Total Settlement | $      737.27 |
| 1202. City/County Tax/Stamps:   Mortgage  $ | | Charges (line 1400) | |
| 1203. State Tax/Stamps:         Mortgage  $ | | | |
| 1204. | | 1603.  Minus Total Disbursements | $   28,779.97 |
| 1205. | | to Others (line 1520) | |
| 1300.  ADDITIONAL SETTLEMENT CHARGES | | | |
| 1301. Survey | | 1604.  Equals Disbursements to | |
| 1302. Pest Inspection | | Borrower (after expiration | |
| 1303. Shipping and Handling   to Priority Land Title Agency | 60.00 | of any applicable rescission | |
| 1304. Wire Fee                to Priority Land Title Agency | 20.00 | period required by law) | $      482.76 |
| 1305. | | | |
| 1400.  TOTAL SETTLEMENT CHARGES  (enter on line 1602) | 737.27 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement & any attachments referred to herein.

Borrower    ARETA J. WENTZ

BY:

Certified to be a true copy.

Priority Land Title Agency
Settlement Agent

Form HUD-1A (2/94) ref. RESPA

## ITEMIZATION OF AMOUNT FINANCED

| | |
|---|---|
| Loan Number: | 11882694 |
| Loan Amount: | $30000.00 |

Date: May 25, 2005

Name of Borrowers: **Areta J. Wentz**

Address of Borrower: 1117 N Maple Street
Eaton, OH 45320

Name of Lender: **Saxon Mortgage, Inc.**

Address of Lender: 4880 COX ROAD
Glen Allen VA 23060

Property Address: 1117 N Maple Street
Eaton, OH 45320

| Itemization of Amount Financed of | |
|---|---|
| Amount Given to you directly | $29796.73 |
| Amount paid on your account | $3437.36 |
| Amount paid to others on your behalf | $0.00 |
| | $203.27 |

**Prepaid finance charges**

| | |
|---|---|
| Flood Certification | $14.00 |
| Courier Fee | $60.00 |
| Wire Fee | $20.00 |
| Prepaid Interest | $9.27 |
| Settlement/Closing | $100.00 |

| Total Prepaid finance charges | $203.27 |
|---|---|

I/We hereby acknowledge receipt of this itemization of amount financed, and authorize direct disbursement as set forth.
BORROWER'S SIGNATURE(S)/ DATE

_____ / _____        _____ / _____
Areta J. Wentz

_____ / _____        _____ / _____

Page 1 of 1

5-Year Interest-Only Loan Program
(Adjusting to Principal and Interest Payments After Sixty Months)
**IMPORTANT INFORMATION ABOUT YOUR MORTGAGE LOAN**
**PLEASE READ CAREFULLY**

May 25, 2005

LENDER:   Saxon Mortgage, Inc.



10

This disclosure notice is given to you in connection with your application for a 5-Year Interest-Only Loan (an "Interest-Only Loan") and provides information that you should read. An Interest-Only Loan is a type of loan that requires you to pay only interest on the principal balance for a certain period of time, after which you will make payments of both principal and interest until your loan is paid in full. The Lender or any other party holding your loan by transfer and having the right to receive payments under the loan is called the "Note Holder".

**How Your Monthly Payment Will Be Determined**

- For the first sixty (60) months of your loan term, your monthly payment will be comprised only of the interest owed on the principal balance of your loan based on the interest rate described in your Note. If you have chosen a Fixed Rate Mortgage Loan, your interest rate is described in Section 2 of your Note. If you have selected an Adjustable Rate Mortgage Loan, your initial interest rate is described in Section 2 of your Note, and the possible changes in your interest rate are described in Section 4 of your Note. **If your loan is an Adjustable Rate Mortgage Loan, you should also carefully read the Adjustable Rate Mortgage Loan program disclosure provided by your lender.**

- After sixty (60) months, your monthly payment will be re-calculated based on the then-unpaid principal balance of your loan at the then-current interest rate of your loan for the remaining term of the loan. Your payment will be comprised of both principal and interest from the sixty-first (61st) monthly payment until your loan is paid in full. PLEASE NOTE: YOUR PAYMENT IS LIKELY TO INCREASE WHEN YOU BEGIN TO MAKE PRINCIPAL AND INTEREST PAYMENTS ON YOUR LOAN.

- You will be notified in writing at least 25, but no more than 120, days prior to the due date of a payment at a new level. This notice will contain information about your payment amount and loan balance *and will include the telephone number of your loan servicer who will answer any question you may have regarding the notice.*

- If you make a payment in excess of the amount due for any monthly payment, any excess amount will be applied to interest then to principal, which may affect the amount due on subsequent payment due dates.

---

### EXAMPLES OF OPERATION OF THE LOAN

The example set out below is based on the following assumptions and shows how a loan described in the disclosure would operate.

| | |
|---|---|
| Loan amount: | $150,000.00 |
| Term of Loan: | 30 years |
| Interest -Only Payment Period: | 60 months |
| Sample Interest Rate: | 9% Fixed Rate |

Page 1 of 2
Last Modified 02.04.04
 SCI 5-Year Interest Only Fixed Rate Disclosure
5YRIOD01.UFF\5YR IO Disclosure

**Example: Calculating Minimum and Maximum Monthly Payments**

Based on the assumptions shown above, your initial monthly interest-only payment will be $1,125.00. Assuming you made no prepayments of principal during the Interest-Only Payment Period, the full amount of your principal balance ($150,000.00) would be re-amortized over the remaining twenty-five (25) years of your loan term, and your monthly payment for the remainder of the loan term would be $1,258.79, comprised of both principal and interest. If you choose an Adjustable Rate Mortgage Loan, your monthly payment amount may vary during both the Interest-Only Payment Period and once you begin paying both principal and interest. Your Adjustable Rate Mortgage Loan program disclosure provides an example of how your interest rate may change after the initial fixed interest rate period. Contact your lender with any questions regarding potential adjustments in monthly payment amount.

*** IMPORTANT--Please sign one copy of this disclosure and return it to the Lender ***

**I/We hereby acknowledge receipt of this 5-Year Interest-Only Loan program disclosure.**

Applicant's Signature Arita J. Wentz _____     Date _____

Applicant's Signature _____     Date _____

Applicant's Signature _____     Date _____

Applicant's Signature _____     Date _____

## Amortization Schedule

Borrower Name(s) :
Arita J. Wentz

Loan Number : 11878199
Lender : Saxon Mortgage, Inc.
Loan Amount : 120,000.00
Interest Rate : 7.300%

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|---|---|---|---|---|---|
| 1 | 07/01/2005 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 2 | 08/01/2005 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 3 | 09/01/2005 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 4 | 10/01/2005 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 5 | 11/01/2005 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 6 | 12/01/2005 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 7 | 01/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 8 | 02/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 9 | 03/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 10 | 04/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 11 | 05/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 12 | 06/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 13 | 07/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 14 | 08/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 15 | 09/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 16 | 10/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 17 | 11/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 18 | 12/01/2006 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 19 | 01/01/2007 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 20 | 02/01/2007 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 21 | 03/01/2007 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 22 | 04/01/2007 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 23 | 05/01/2007 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 24 | 06/01/2007 | $730.00 | $0.00 | $730.00 | $120,000.00 |
| 25 | 07/01/2007 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 26 | 08/01/2007 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 27 | 09/01/2007 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 28 | 10/01/2007 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 29 | 11/01/2007 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 30 | 12/01/2007 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 31 | 01/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 32 | 02/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 33 | 03/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 34 | 04/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 35 | 05/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 36 | 06/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 37 | 07/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 38 | 08/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |

GFS Form AMORT (7/10)                    Page 1 of 8

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|---|---|---|---|---|---|
| 39 | 09/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 40 | 10/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 41 | 11/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 42 | 12/01/2008 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 43 | 01/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 44 | 02/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 45 | 03/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 46 | 04/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 47 | 05/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 48 | 06/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 49 | 07/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 50 | 08/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 51 | 09/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 52 | 10/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 53 | 11/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 54 | 12/01/2009 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 55 | 01/01/2010 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 56 | 02/01/2010 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 57 | 03/01/2010 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 58 | 04/01/2010 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 59 | 05/01/2010 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 60 | 06/01/2010 | $875.00 | $0.00 | $875.00 | $120,000.00 |
| 61 | 07/01/2010 | $986.58 | $111.56 | $875.00 | $119,888.42 |
| 62 | 08/01/2010 | $986.58 | $112.39 | $874.19 | $119,776.03 |
| 63 | 09/01/2010 | $986.58 | $113.22 | $873.36 | $119,662.81 |
| 64 | 10/01/2010 | $986.58 | $114.04 | $872.54 | $119,548.77 |
| 65 | 11/01/2010 | $986.58 | $114.87 | $871.71 | $119,433.90 |
| 66 | 12/01/2010 | $986.58 | $115.70 | $870.88 | $119,318.20 |
| 67 | 01/01/2011 | $986.58 | $116.55 | $870.03 | $119,201.65 |
| 68 | 02/01/2011 | $986.58 | $117.41 | $869.17 | $119,084.24 |
| 69 | 03/01/2011 | $986.58 | $118.25 | $868.33 | $118,965.99 |
| 70 | 04/01/2011 | $986.58 | $119.12 | $867.46 | $118,846.87 |
| 71 | 05/01/2011 | $986.58 | $119.99 | $866.59 | $118,726.88 |
| 72 | 06/01/2011 | $986.58 | $120.86 | $865.72 | $118,606.02 |
| 73 | 07/01/2011 | $986.58 | $121.75 | $864.83 | $118,484.27 |
| 74 | 08/01/2011 | $986.58 | $122.63 | $863.95 | $118,361.64 |
| 75 | 09/01/2011 | $986.58 | $123.53 | $863.05 | $118,238.11 |
| 76 | 10/01/2011 | $986.58 | $124.42 | $862.16 | $118,113.69 |
| 77 | 11/01/2011 | $986.58 | $125.34 | $861.24 | $117,988.35 |
| 78 | 12/01/2011 | $986.58 | $126.25 | $860.33 | $117,862.10 |
| 79 | 01/01/2012 | $986.58 | $127.17 | $859.41 | $117,734.93 |
| 80 | 02/01/2012 | $986.58 | $128.09 | $858.49 | $117,606.84 |
| 81 | 03/01/2012 | $986.58 | $129.03 | $857.55 | $117,477.81 |
| 82 | 04/01/2012 | $986.58 | $129.97 | $856.61 | $117,347.84 |
| 83 | 05/01/2012 | $986.58 | $130.92 | $855.66 | $117,216.92 |
| 84 | 06/01/2012 | $986.58 | $131.88 | $854.70 | $117,085.04 |

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|---|---|---|---|---|---|
| 85 | 07/01/2012 | $986.58 | $132.83 | $853.75 | $116,952.21 |
| 86 | 08/01/2012 | $986.58 | $133.80 | $852.78 | $116,818.41 |
| 87 | 09/01/2012 | $986.58 | $134.78 | $851.80 | $116,683.63 |
| 88 | 10/01/2012 | $986.58 | $135.76 | $850.82 | $116,547.87 |
| 89 | 11/01/2012 | $986.58 | $136.76 | $849.82 | $116,411.11 |
| 90 | 12/01/2012 | $986.58 | $137.75 | $848.83 | $116,273.36 |
| 91 | 01/01/2013 | $985.58 | $138.75 | $847.83 | $116,134.61 |
| 92 | 02/01/2013 | $986.58 | $139.76 | $846.82 | $115,994.85 |
| 93 | 03/01/2013 | $986.58 | $140.79 | $845.79 | $115,854.06 |
| 94 | 04/01/2013 | $986.58 | $141.81 | $844.77 | $115,712.25 |
| 95 | 05/01/2013 | $986.58 | $142.84 | $843.74 | $115,569.41 |
| 96 | 06/01/2013 | $986.58 | $143.89 | $842.69 | $115,425.52 |
| 97 | 07/01/2013 | $986.58 | $144.94 | $841.64 | $115,280.58 |
| 98 | 08/01/2013 | $986.58 | $145.99 | $840.59 | $115,134.59 |
| 99 | 09/01/2013 | $986.58 | $147.06 | $839.52 | $114,987.53 |
| 100 | 10/01/2013 | $985.58 | $148.12 | $838.46 | $114,839.41 |
| 101 | 11/01/2013 | $986.58 | $149.21 | $837.37 | $114,690.20 |
| 102 | 12/01/2013 | $986.58 | $150.30 | $836.28 | $114,539.90 |
| 103 | 01/01/2014 | $986.58 | $151.39 | $835.19 | $114,388.51 |
| 104 | 02/01/2014 | $986.58 | $152.50 | $834.08 | $114,236.01 |
| 105 | 03/01/2014 | $986.58 | $153.61 | $832.97 | $114,082.40 |
| 106 | 04/01/2014 | $986.58 | $154.73 | $831.85 | $113,927.67 |
| 107 | 05/01/2014 | $986.58 | $155.86 | $830.72 | $113,771.81 |
| 108 | 06/01/2014 | $986.58 | $156.99 | $829.59 | $113,614.82 |
| 109 | 07/01/2014 | $986.58 | $158.14 | $828.44 | $113,456.68 |
| 110 | 08/01/2014 | $986.58 | $159.29 | $827.29 | $113,297.39 |
| 111 | 09/01/2014 | $986.58 | $160.45 | $826.13 | $113,136.94 |
| 112 | 10/01/2014 | $986.58 | $161.63 | $824.95 | $112,975.31 |
| 113 | 11/01/2014 | $986.58 | $162.80 | $823.78 | $112,812.51 |
| 114 | 12/01/2014 | $986.58 | $163.99 | $822.59 | $112,648.52 |
| 115 | 01/01/2015 | $986.58 | $165.18 | $821.40 | $112,483.34 |
| 116 | 02/01/2015 | $986.58 | $166.39 | $820.19 | $112,316.95 |
| 117 | 03/01/2015 | $986.58 | $167.60 | $818.98 | $112,149.35 |
| 118 | 04/01/2015 | $986.58 | $168.83 | $817.75 | $111,980.52 |
| 119 | 05/01/2015 | $986.58 | $170.05 | $816.53 | $111,810.47 |
| 120 | 06/01/2015 | $986.58 | $171.30 | $815.28 | $111,639.17 |
| 121 | 07/01/2015 | $986.58 | $172.54 | $814.04 | $111,466.63 |
| 122 | 08/01/2015 | $986.58 | $173.81 | $812.77 | $111,292.82 |
| 123 | 09/01/2015 | $986.58 | $175.07 | $811.51 | $111,117.75 |
| 124 | 10/01/2015 | $986.58 | $176.34 | $810.24 | $110,941.41 |
| 125 | 11/01/2015 | $986.58 | $177.63 | $808.95 | $110,763.78 |
| 126 | 12/01/2015 | $986.58 | $178.93 | $807.65 | $110,584.85 |
| 127 | 01/01/2016 | $986.58 | $180.23 | $806.35 | $110,404.62 |
| 128 | 02/01/2016 | $986.58 | $181.55 | $805.03 | $110,223.07 |
| 129 | 03/01/2016 | $986.58 | $182.87 | $803.71 | $110,040.20 |
| 130 | 04/01/2016 | $986.58 | $184.20 | $802.38 | $109,856.00 |

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|---|---|---|---|---|---|
| 131 | 05/01/2016 | $986.58 | $185.55 | $801.03 | $109,670.45 |
| 132 | 06/01/2016 | $986.58 | $186.90 | $799.68 | $109,483.55 |
| 133 | 07/01/2016 | $986.58 | $188.26 | $798.32 | $109,295.29 |
| 134 | 08/01/2016 | $986.58 | $189.64 | $796.94 | $109,105.65 |
| 135 | 09/01/2016 | $986.58 | $191.02 | $795.56 | $108,914.63 |
| 136 | 10/01/2016 | $986.58 | $192.41 | $794.17 | $108,722.22 |
| 137 | 11/01/2016 | $986.58 | $193.81 | $792.77 | $108,528.41 |
| 138 | 12/01/2016 | $986.58 | $195.23 | $791.35 | $108,333.18 |
| 139 | 01/01/2017 | $986.58 | $196.65 | $789.93 | $108,136.53 |
| 140 | 02/01/2017 | $986.58 | $198.08 | $788.50 | $107,938.45 |
| 141 | 03/01/2017 | $986.58 | $199.53 | $787.05 | $107,738.92 |
| 142 | 04/01/2017 | $986.58 | $200.99 | $785.59 | $107,537.93 |
| 143 | 05/01/2017 | $986.58 | $202.44 | $784.14 | $107,335.49 |
| 144 | 06/01/2017 | $986.58 | $203.93 | $782.65 | $107,131.56 |
| 145 | 07/01/2017 | $986.58 | $205.41 | $781.17 | $106,926.15 |
| 146 | 08/01/2017 | $986.58 | $206.91 | $779.67 | $106,719.24 |
| 147 | 09/01/2017 | $986.58 | $208.42 | $778.16 | $106,510.82 |
| 148 | 10/01/2017 | $986.58 | $209.94 | $776.64 | $106,300.88 |
| 149 | 11/01/2017 | $986.58 | $211.47 | $775.11 | $106,089.41 |
| 150 | 12/01/2017 | $986.58 | $213.01 | $773.57 | $105,876.40 |
| 151 | 01/01/2018 | $986.58 | $214.57 | $772.01 | $105,661.83 |
| 152 | 02/01/2018 | $986.58 | $216.12 | $770.46 | $105,445.71 |
| 153 | 03/01/2018 | $986.58 | $217.71 | $768.87 | $105,228.00 |
| 154 | 04/01/2018 | $986.58 | $219.29 | $767.29 | $105,008.71 |
| 155 | 05/01/2018 | $986.58 | $220.89 | $765.69 | $104,787.82 |
| 156 | 06/01/2018 | $986.58 | $222.51 | $764.07 | $104,565.31 |
| 157 | 07/01/2018 | $986.58 | $224.12 | $762.46 | $104,341.19 |
| 158 | 08/01/2018 | $988.58 | $225.76 | $760.82 | $104,115.43 |
| 159 | 09/01/2018 | $986.58 | $227.40 | $759.18 | $103,888.03 |
| 160 | 10/01/2018 | $986.58 | $229.07 | $757.51 | $103,658.96 |
| 161 | 11/01/2018 | $986.58 | $230.73 | $755.85 | $103,428.23 |
| 162 | 12/01/2018 | $986.58 | $232.42 | $754.16 | $103,195.81 |
| 163 | 01/01/2019 | $986.58 | $234.11 | $752.47 | $102,961.70 |
| 164 | 02/01/2019 | $986.58 | $235.81 | $750.77 | $102,725.89 |
| 165 | 03/01/2019 | $986.58 | $237.54 | $749.04 | $102,488.35 |
| 166 | 04/01/2019 | $986.58 | $239.27 | $747.31 | $102,249.08 |
| 167 | 05/01/2019 | $986.58 | $241.01 | $745.57 | $102,008.07 |
| 168 | 06/01/2019 | $986.58 | $242.78 | $743.80 | $101,765.29 |
| 169 | 07/01/2019 | $986.58 | $244.54 | $742.04 | $101,520.75 |
| 170 | 08/01/2019 | $986.58 | $246.32 | $740.26 | $101,274.43 |
| 171 | 09/01/2019 | $986.58 | $248.12 | $738.46 | $101,026.31 |
| 172 | 10/01/2019 | $986.58 | $249.93 | $736.65 | $100,776.38 |
| 173 | 11/01/2019 | $986.58 | $251.75 | $734.83 | $100,524.63 |
| 174 | 12/01/2019 | $986.58 | $253.59 | $732.99 | $100,271.04 |
| 175 | 01/01/2020 | $986.58 | $255.44 | $731.14 | $100,015.60 |
| 176 | 02/01/2020 | $986.58 | $257.30 | $729.28 | $99,758.30 |

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|---|---|---|---|---|---|
| 177 | 03/01/2020 | $986.58 | $259.17 | $727.41 | $99,499.13 |
| 178 | 04/01/2020 | $986.58 | $261.07 | $725.51 | $99,238.06 |
| 179 | 05/01/2020 | $986.58 | $262.97 | $723.61 | $98,975.09 |
| 180 | 06/01/2020 | $986.58 | $264.89 | $721.69 | $98,710.20 |
| 181 | 07/01/2020 | $986.58 | $266.81 | $719.77 | $98,443.39 |
| 182 | 08/01/2020 | $986.58 | $268.77 | $717.81 | $98,174.62 |
| 183 | 09/01/2020 | $986.58 | $270.72 | $715.86 | $97,903.90 |
| 184 | 10/01/2020 | $986.58 | $272.70 | $713.88 | $97,631.20 |
| 185 | 11/01/2020 | $986.58 | $274.68 | $711.90 | $97,356.52 |
| 186 | 12/01/2020 | $986.58 | $276.69 | $709.89 | $97,079.83 |
| 187 | 01/01/2021 | $986.58 | $278.71 | $707.87 | $96,801.12 |
| 188 | 02/01/2021 | $986.58 | $280.74 | $705.84 | $96,520.38 |
| 189 | 03/01/2021 | $986.58 | $282.78 | $703.80 | $96,237.60 |
| 190 | 04/01/2021 | $986.58 | $284.85 | $701.73 | $95,952.75 |
| 191 | 05/01/2021 | $986.58 | $286.93 | $699.65 | $95,665.82 |
| 192 | 06/01/2021 | $986.58 | $289.01 | $697.57 | $95,376.81 |
| 193 | 07/01/2021 | $986.58 | $291.13 | $695.45 | $95,085.68 |
| 194 | 08/01/2021 | $986.58 | $293.24 | $693.34 | $94,792.44 |
| 195 | 09/01/2021 | $986.58 | $295.39 | $691.19 | $94,497.05 |
| 196 | 10/01/2021 | $986.58 | $297.54 | $689.04 | $94,199.51 |
| 197 | 11/01/2021 | $986.58 | $299.71 | $686.87 | $93,899.80 |
| 198 | 12/01/2021 | $986.58 | $301.89 | $684.69 | $93,597.91 |
| 199 | 01/01/2022 | $986.58 | $304.10 | $682.48 | $93,293.81 |
| 200 | 02/01/2022 | $986.58 | $306.31 | $680.27 | $92,987.50 |
| 201 | 03/01/2022 | $986.58 | $308.54 | $678.04 | $92,678.96 |
| 202 | 04/01/2022 | $986.58 | $310.80 | $675.78 | $92,368.16 |
| 203 | 05/01/2022 | $986.58 | $313.06 | $673.52 | $92,055.10 |
| 204 | 06/01/2022 | $986.58 | $315.35 | $671.23 | $91,739.75 |
| 205 | 07/01/2022 | $986.58 | $317.64 | $668.94 | $91,422.11 |
| 206 | 08/01/2022 | $986.58 | $319.96 | $666.62 | $91,102.15 |
| 207 | 09/01/2022 | $986.58 | $322.30 | $664.28 | $90,779.85 |
| 208 | 10/01/2022 | $986.58 | $324.64 | $661.94 | $90,455.21 |
| 209 | 11/01/2022 | $986.58 | $327.01 | $659.57 | $90,128.20 |
| 210 | 12/01/2022 | $986.58 | $329.39 | $657.19 | $89,798.81 |
| 211 | 01/01/2023 | $986.58 | $331.80 | $654.78 | $89,467.01 |
| 212 | 02/01/2023 | $986.58 | $334.22 | $652.36 | $89,132.79 |
| 213 | 03/01/2023 | $986.58 | $336.65 | $649.93 | $88,796.14 |
| 214 | 04/01/2023 | $986.58 | $339.11 | $647.47 | $88,457.03 |
| 215 | 05/01/2023 | $986.58 | $341.58 | $645.00 | $88,115.45 |
| 216 | 06/01/2023 | $986.58 | $344.07 | $642.51 | $87,771.38 |
| 217 | 07/01/2023 | $986.58 | $346.58 | $640.00 | $87,424.80 |
| 218 | 08/01/2023 | $986.58 | $349.11 | $637.47 | $87,075.69 |
| 219 | 09/01/2023 | $986.58 | $351.65 | $634.93 | $86,724.04 |
| 220 | 10/01/2023 | $986.58 | $354.22 | $632.36 | $86,369.82 |
| 221 | 11/01/2023 | $986.58 | $356.80 | $629.78 | $86,013.02 |
| 222 | 12/01/2023 | $986.58 | $359.40 | $627.18 | $85,653.62 |

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|---|---|---|---|---|---|
| 223 | 01/01/2024 | $986.58 | $362.02 | $624.56 | $85,291.60 |
| 224 | 02/01/2024 | $986.58 | $364.67 | $621.91 | $84,926.93 |
| 225 | 03/01/2024 | $986.58 | $367.32 | $619.26 | $84,559.61 |
| 226 | 04/01/2024 | $986.58 | $370.00 | $616.58 | $84,189.61 |
| 227 | 05/01/2024 | $986.58 | $372.69 | $613.89 | $83,816.92 |
| 228 | 06/01/2024 | $986.58 | $375.42 | $611.16 | $83,441.50 |
| 229 | 07/01/2024 | $986.58 | $378.15 | $608.43 | $83,063.35 |
| 230 | 08/01/2024 | $986.58 | $380.91 | $605.67 | $82,682.44 |
| 231 | 09/01/2024 | $986.58 | $383.69 | $602.89 | $82,298.75 |
| 232 | 10/01/2024 | $986.58 | $386.48 | $600.10 | $81,912.27 |
| 233 | 11/01/2024 | $986.58 | $389.31 | $597.27 | $81,522.96 |
| 234 | 12/01/2024 | $986.58 | $392.14 | $594.44 | $81,130.82 |
| 235 | 01/01/2025 | $986.58 | $395.00 | $591.58 | $80,735.82 |
| 236 | 02/01/2025 | $986.58 | $397.88 | $588.70 | $80,337.94 |
| 237 | 03/01/2025 | $986.58 | $400.78 | $585.80 | $79,937.16 |
| 238 | 04/01/2025 | $986.58 | $403.71 | $582.87 | $79,533.45 |
| 239 | 05/01/2025 | $986.58 | $406.65 | $579.93 | $79,126.80 |
| 240 | 06/01/2025 | $986.58 | $409.61 | $576.97 | $78,717.19 |
| 241 | 07/01/2025 | $986.58 | $412.60 | $573.98 | $78,304.59 |
| 242 | 08/01/2025 | $986.58 | $415.61 | $570.97 | $77,888.98 |
| 243 | 09/01/2025 | $986.58 | $418.64 | $567.94 | $77,470.34 |
| 244 | 10/01/2025 | $986.58 | $421.69 | $564.89 | $77,048.65 |
| 245 | 11/01/2025 | $986.58 | $424.77 | $561.81 | $76,623.88 |
| 246 | 12/01/2025 | $986.58 | $427.86 | $558.72 | $76,196.02 |
| 247 | 01/01/2026 | $986.58 | $430.99 | $555.59 | $75,765.03 |
| 248 | 02/01/2026 | $986.58 | $434.12 | $552.46 | $75,330.91 |
| 249 | 03/01/2026 | $986.58 | $437.30 | $549.28 | $74,893.61 |
| 250 | 04/01/2026 | $986.58 | $440.48 | $546.10 | $74,453.13 |
| 251 | 05/01/2026 | $986.58 | $443.69 | $542.89 | $74,009.44 |
| 252 | 06/01/2026 | $986.58 | $446.93 | $539.65 | $73,562.51 |
| 253 | 07/01/2026 | $986.58 | $450.18 | $536.40 | $73,112.33 |
| 254 | 08/01/2026 | $986.58 | $453.47 | $533.11 | $72,658.86 |
| 255 | 09/01/2026 | $986.58 | $456.78 | $529.80 | $72,202.08 |
| 256 | 10/01/2026 | $986.58 | $460.11 | $526.47 | $71,741.97 |
| 257 | 11/01/2026 | $986.58 | $463.46 | $523.12 | $71,278.51 |
| 258 | 12/01/2026 | $986.58 | $466.84 | $519.74 | $70,811.67 |
| 259 | 01/01/2027 | $986.58 | $470.24 | $516.34 | $70,341.43 |
| 260 | 02/01/2027 | $986.58 | $473.68 | $512.90 | $69,867.75 |
| 261 | 03/01/2027 | $986.58 | $477.12 | $509.46 | $69,390.63 |
| 262 | 04/01/2027 | $986.58 | $480.61 | $505.97 | $68,910.02 |
| 263 | 05/01/2027 | $986.58 | $484.11 | $502.47 | $68,425.91 |
| 264 | 06/01/2027 | $986.58 | $487.64 | $498.94 | $67,938.27 |
| 265 | 07/01/2027 | $986.58 | $491.20 | $495.38 | $67,447.07 |
| 266 | 08/01/2027 | $986.58 | $494.78 | $491.80 | $66,952.29 |
| 267 | 09/01/2027 | $986.58 | $498.38 | $488.20 | $66,453.91 |
| 268 | 10/01/2027 | $986.58 | $502.02 | $484.56 | $65,951.89 |

Page 6 of 8

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|--------|-----------|-----------|------------------|-----------------|--------------------|
| 269 | 11/01/2027 | $986.58 | $505.69 | $480.89 | $65,446.20 |
| 270 | 12/01/2027 | $986.58 | $509.36 | $477.22 | $64,936.84 |
| 271 | 01/01/2028 | $986.58 | $513.09 | $473.49 | $64,423.75 |
| 272 | 02/01/2028 | $986.58 | $516.82 | $469.76 | $63,906.93 |
| 273 | 03/01/2028 | $986.58 | $520.59 | $465.99 | $63,386.34 |
| 274 | 04/01/2028 | $986.58 | $524.39 | $462.19 | $62,861.95 |
| 275 | 05/01/2028 | $986.58 | $528.21 | $458.37 | $62,333.74 |
| 276 | 06/01/2028 | $986.58 | $532.06 | $454.52 | $61,801.68 |
| 277 | 07/01/2028 | $986.58 | $535.95 | $450.63 | $61,265.73 |
| 278 | 08/01/2028 | $986.58 | $539.85 | $446.73 | $60,725.88 |
| 279 | 09/01/2028 | $986.58 | $543.78 | $442.80 | $60,182.10 |
| 280 | 10/01/2028 | $986.58 | $547.76 | $438.82 | $59,634.34 |
| 281 | 11/01/2028 | $986.58 | $551.74 | $434.84 | $59,082.60 |
| 282 | 12/01/2028 | $986.58 | $555.77 | $430.81 | $58,526.83 |
| 283 | 01/01/2029 | $986.58 | $559.82 | $426.76 | $57,967.01 |
| 284 | 02/01/2029 | $986.58 | $563.91 | $422.67 | $57,403.10 |
| 285 | 03/01/2029 | $986.58 | $568.01 | $418.57 | $56,835.09 |
| 286 | 04/01/2029 | $986.58 | $572.16 | $414.42 | $56,262.93 |
| 287 | 05/01/2029 | $986.58 | $576.33 | $410.25 | $55,686.60 |
| 288 | 06/01/2029 | $986.58 | $580.53 | $406.05 | $55,106.07 |
| 289 | 07/01/2029 | $986.58 | $584.77 | $401.81 | $54,521.30 |
| 290 | 08/01/2029 | $986.58 | $589.03 | $397.55 | $53,932.27 |
| 291 | 09/01/2029 | $986.58 | $593.32 | $393.26 | $53,338.95 |
| 292 | 10/01/2029 | $986.58 | $597.65 | $388.93 | $52,741.30 |
| 293 | 11/01/2029 | $986.58 | $602.01 | $384.57 | $52,139.29 |
| 294 | 12/01/2029 | $986.58 | $606.40 | $380.18 | $51,532.89 |
| 295 | 01/01/2030 | $986.58 | $610.82 | $375.76 | $50,922.07 |
| 296 | 02/01/2030 | $986.58 | $615.27 | $371.31 | $50,306.80 |
| 297 | 03/01/2030 | $986.58 | $619.76 | $366.82 | $49,687.04 |
| 298 | 04/01/2030 | $986.58 | $624.28 | $362.30 | $49,062.76 |
| 299 | 05/01/2030 | $986.58 | $628.83 | $357.75 | $48,433.93 |
| 300 | 06/01/2030 | $986.58 | $633.41 | $353.17 | $47,800.52 |
| 301 | 07/01/2030 | $986.58 | $638.04 | $348.54 | $47,162.48 |
| 302 | 08/01/2030 | $986.58 | $642.68 | $343.90 | $46,519.80 |
| 303 | 09/01/2030 | $986.58 | $647.38 | $339.20 | $45,872.42 |
| 304 | 10/01/2030 | $986.58 | $652.09 | $334.49 | $45,220.33 |
| 305 | 11/01/2030 | $986.58 | $656.85 | $329.73 | $44,563.48 |
| 306 | 12/01/2030 | $986.58 | $661.64 | $324.94 | $43,901.84 |
| 307 | 01/01/2031 | $986.58 | $666.46 | $320.12 | $43,235.38 |
| 308 | 02/01/2031 | $986.58 | $671.32 | $315.26 | $42,564.06 |
| 309 | 03/01/2031 | $986.58 | $676.22 | $310.36 | $41,887.84 |
| 310 | 04/01/2031 | $986.58 | $681.15 | $305.43 | $41,206.69 |
| 311 | 05/01/2031 | $986.58 | $686.11 | $300.47 | $40,520.58 |
| 312 | 06/01/2031 | $986.58 | $691.12 | $295.46 | $39,829.46 |
| 313 | 07/01/2031 | $986.58 | $696.16 | $290.42 | $39,133.30 |
| 314 | 08/01/2031 | $986.58 | $701.23 | $285.35 | $38,432.07 |

| Pymt # | Pymt Date | Total P&I | Principal Amount | Interest Amount | Curr. Unpaid Prin. |
|--------|-----------|-----------|------------------|-----------------|--------------------|
| 315 | 09/01/2031 | $986.58 | $706.35 | $280.23 | $37,725.72 |
| 316 | 10/01/2031 | $986.58 | $711.49 | $275.09 | $37,014.23 |
| 317 | 11/01/2031 | $986.58 | $716.69 | $269.89 | $36,297.54 |
| 318 | 12/01/2031 | $986.58 | $721.91 | $264.67 | $35,575.63 |
| 319 | 01/01/2032 | $986.58 | $727.17 | $259.41 | $34,848.46 |
| 320 | 02/01/2032 | $986.58 | $732.48 | $254.10 | $34,115.98 |
| 321 | 03/01/2032 | $986.58 | $737.82 | $248.76 | $33,378.16 |
| 322 | 04/01/2032 | $986.58 | $743.19 | $243.39 | $32,634.97 |
| 323 | 05/01/2032 | $986.58 | $748.62 | $237.96 | $31,886.35 |
| 324 | 06/01/2032 | $986.58 | $754.08 | $232.50 | $31,132.27 |
| 325 | 07/01/2032 | $986.58 | $759.57 | $227.01 | $30,372.70 |
| 326 | 08/01/2032 | $986.58 | $765.11 | $221.47 | $29,607.59 |
| 327 | 09/01/2032 | $986.58 | $770.69 | $215.89 | $28,836.90 |
| 328 | 10/01/2032 | $986.58 | $776.31 | $210.27 | $28,060.59 |
| 329 | 11/01/2032 | $986.58 | $781.98 | $204.60 | $27,278.61 |
| 330 | 12/01/2032 | $986.58 | $787.67 | $198.91 | $26,490.94 |
| 331 | 01/01/2033 | $986.58 | $793.42 | $193.16 | $25,697.52 |
| 332 | 02/01/2033 | $986.58 | $799.20 | $187.38 | $24,898.32 |
| 333 | 03/01/2033 | $986.58 | $805.03 | $181.55 | $24,093.29 |
| 334 | 04/01/2033 | $986.58 | $810.90 | $175.68 | $23,282.39 |
| 335 | 05/01/2033 | $986.58 | $816.81 | $169.77 | $22,465.58 |
| 336 | 06/01/2033 | $986.58 | $822.77 | $163.81 | $21,642.81 |
| 337 | 07/01/2033 | $986.58 | $828.77 | $157.81 | $20,814.04 |
| 338 | 08/01/2033 | $986.58 | $834.81 | $151.77 | $19,979.23 |
| 339 | 09/01/2033 | $986.58 | $840.90 | $145.68 | $19,138.33 |
| 340 | 10/01/2033 | $986.58 | $847.02 | $139.56 | $18,291.31 |
| 341 | 11/01/2033 | $986.58 | $853.21 | $133.37 | $17,438.10 |
| 342 | 12/01/2033 | $986.58 | $859.43 | $127.15 | $16,578.67 |
| 343 | 01/01/2034 | $986.58 | $865.69 | $120.89 | $15,712.98 |
| 344 | 02/01/2034 | $986.58 | $872.01 | $114.57 | $14,840.97 |
| 345 | 03/01/2034 | $986.58 | $878.36 | $108.22 | $13,962.61 |
| 346 | 04/01/2034 | $986.58 | $884.77 | $101.81 | $13,077.84 |
| 347 | 05/01/2034 | $986.58 | $891.22 | $95.36 | $12,186.62 |
| 348 | 06/01/2034 | $986.58 | $897.72 | $88.86 | $11,288.90 |
| 349 | 07/01/2034 | $986.58 | $904.27 | $82.31 | $10,384.63 |
| 350 | 08/01/2034 | $986.58 | $910.86 | $75.72 | $9,473.77 |
| 351 | 09/01/2034 | $986.58 | $917.50 | $69.08 | $8,556.27 |
| 352 | 10/01/2034 | $986.58 | $924.19 | $62.39 | $7,632.08 |
| 353 | 11/01/2034 | $986.58 | $930.93 | $55.65 | $6,701.15 |
| 354 | 12/01/2034 | $986.58 | $937.71 | $48.87 | $5,763.44 |
| 355 | 01/01/2035 | $986.58 | $944.56 | $42.02 | $4,818.88 |
| 356 | 02/01/2035 | $986.58 | $951.44 | $35.14 | $3,867.44 |
| 357 | 03/01/2035 | $986.58 | $958.38 | $28.20 | $2,909.06 |
| 358 | 04/01/2035 | $986.58 | $965.37 | $21.21 | $1,943.69 |
| 359 | 05/01/2035 | $986.58 | $972.41 | $14.17 | $971.28 |
| 360 | 06/01/2035 | $978.37 | $971.28 | $7.09 | $0.00 |

| A. | U.S. DEPARTMENT OF HOUSING & URBAN DEVELOPMENT | HUD-1A  OMB NO. 2502-0491 |

### SETTLEMENT STATEMENT
Optional Form for Transactions without Sellers

EXHIBIT

11

| NAME AND ADDRESS OF BORROWER: | NAME AND ADDRESS OF LENDER: |
|---|---|
| ARETA J. WENTZ<br>1117 N. MAPLE STREET<br>EATON, OHIO 45320 | SAXON MORTGAGE, INC.<br>4880 COX ROAD<br>GLENA ALLEN,VIRGINIA 23060 |

| PROPERTY LOCATION:<br>1117 N. MAPLE STREET<br>EATON, OH 45320<br>PREBLE County, Ohio | SETTLEMENT AGENT:   Priority Land Title Agency |
|---|---|
| | PLACE OF SETTLEMENT: 655 Metro Place South<br>Dublin, Ohio 43017 |
| | SETTLEMENT DATE:   May 25, 2005      Disburse:05/31/05 |
| | LOAN NUMBER:   11878199 |

**L.  SETTLEMENT CHARGES**

**M. DISBURSEMENT TO OTHERS**

| 800. ITEMS PAYABLE IN CONNECTION WITH LOAN | | | 1501. | |
|---|---|---|---|---|
| 801. Loan Origination Fee 4.0000% to RANDALL MORTGAGE | | 4,800.00 | | |
| 802. Loan Discount            % to | | | 1502. | |
| 803. Appraisal Fee            to POLARIS APPRAISAL | | 525.00 | | |
| 804. Credit Report            to | | | 1503. | |
| 805. FLOOD CERT FEE           to FIDELITY NATIONAL | | 14.00 | | |
| 806. TAX SERVICE FEE          to SAXON MORTGAGE, INC. | | 66.00 | 1504. | |
| 807. UNDERWRITING FEE         to SAXON MORTGAGE, INC. | | 650.00 | | |
| 808. BROKER COURIER FEE       to RANDALL MORTGAGE | | 45.00 | 1505. | |
| 809. BROKER ADMINISTRATION    to RANDALL MORTGAGE | | 350.00 | | |
| 810. BROKER PROCESSING        to RANDALL MORTGAGE | | 400.00 | 1506. | |
| 811. BROKER COMP BY SAXON     to RANDALL MORTGAGE    POC $2,400.00b | | | | |
| 812. | | | 1507. | |
| 813. | | | | |
| 814. | | | 1508. | |
| 815. | | | | |
| 816. | | | 1509. | |
| 817. | | | | |
| 818. | | | 1510. | |
| 819. | | | | |
| 820. | | | 1511. | |
| 900. ITEMS REQUIRED BY LENDER TO BE PAID IN ADVANCE | | | | |
| 901. Interest  05/31/05  to  06/01/05  @ $       24.000000/day | | 24.00 | 1512. | |
| 902. Mortgage Insurance Prem for          months to | | | | |
| 903. Hazard Insurance Prem for       1.0 yr to | | | 1513. PAYOFF<br>BENEFICIAL | to |
| 904. | | | | 130,336.97 |
| 905. | | | 1514. PAYOFF<br>BENEFICIAL | to |
| 1000. RESERVES DEPOSITED WITH LENDER | | | | 9,979.00 |
| 1001. Hazard Insurance       months @ $         per month | | | 1520. TOTAL DISBURSED | |
| 1002. Mortgage Insurance     months @ $         per month | | | (enter on line 1603) | 140,315.97 |
| 1003. City/Town Taxes        months @ $         per month | | | | |
| 1004. County Taxes           months @ $         per month | | | | |
| 1005. Assessments            months @ $         per month | | | | |
| 1006.                        months @ $         per month | | | | |
| 1007.                        months @ $         per month | | | | |
| 1008.                        months @ $         per month | | | | |
| 1100. TITLE CHARGES | | 0.00 | | |
| 1101. Settlement Fee         to Priority Land Title Agency | | | | |
| 1102. Title Search           to Priority Land Title Agency | | 200.00 | | |
| 1103. Title Examination      to | | 250.00 | | |
| 1104. Title Ins. Binder      to Priority Land Title Agency | | | | |
| 1105. Document Prep.         to | | 50.00 | | |
| 1106. Notary Fees            to | | | | |
| 1107. Attorney's Fees        to | | | | |
|       (includes above item numbers: | | | | |
| 1108.  Title Insurance       to PRIORITY LAND TITLE AGENCY | | 480.00 | | |
|       (includes above item numbers: | | | | |
| 1109.  Lender's Coverage  $    120,000.00 | | | | |
| 1110.  Owner's Coverage   $ | | | | |
| 1111. EPA ENDORSEMENT        to Priority Land Title Agency | | 75.00 | | |
| 1112. SURVEY ENDORSEMENT     to Priority Land Title Agency | | 50.00 | N.   NET SETTLEMENT | |
| 1113. ARM ENDORSEMENT        to Priority Land Title Agency | | 75.00 | | |
| 1114. COMP ENDORSMENT        to Priority Land Title Agency | | 150.00 | | |
| 1115. | | | 1600.  Loan Amount | $ | 120,000.00 |
| 1116. | | | | |
| 1117. | | | | |
| 1118. | | | 1601.  Plus Cash/Check from<br>Borrower | $ | 28,779.97 |
| 1200. GOVERNMENT RECORDING AND TRANSFER CHARGES | | | | |
| 1201. Recording fees: Mortgage $    180.00  ; Releases $ | | 180.00 | 1602.  Minus Total Settlement<br>Charges (line 1400) | $ | 8,464.00 |
| 1202. City/County Tax/Stamps:   Mortgage             $ | | | | |
| 1203. State Tax/Stamps:         Mortgage             $ | | | 1603.  Minus Total Disbursements<br>to Others (line 1520) | $ | 140,315.97 |
| 1204. | | | | |
| 1205. | | | | |
| 1300. ADDITIONAL SETTLEMENT CHARGES | | | 1604.  Equals Disbursements to<br>Borrower (after expiration | | |
| 1301. Survey | | | of any applicable rescission | | |
| 1302. Pest Inspection | | | period required by law) | $ | 0.00 |
| 1303. Shipping and Handling    to Priority Land Title Agency | | 60.00 | | |
| 1304. Wire Fee                 to Priority Land Title Agency | | 20.00 | | |
| 1305. | | | | |
| 1400. TOTAL SETTLEMENT CHARGES   (enter on line 1602) | | 8,464.00 | | |

The undersigned hereby acknowledge receipt of a completed copy of this statement & any attachments referred to herein.

Borrower    ARETA J. WENTZ

BY:_____

'ified to be a true copy.

Priority Land Title Agency
Settlement Agent

HUD-1A (2/94) ref. RESPA

| Loan Number: | 11878199 | | Date: | May 25, 2005 |
| Loan Amount: | $120000.00 | | | |
| Name of Borrowers: | Arita J. Wentz | | | |
| Address of Borrower: | 1117 N Maple Street Eaton, OH 45320 | | | |
| Name of Lender: | Saxon Mortgage, Inc. | | | |
| Address of Lender: | 4880 COX ROAD Glen Allen VA 23060 | | | |
| Property Address: | 1117 N Maple Street Eaton, OH 45320 | | | |

| Itemization of Amount Financed of | |
| --- | --- |
| Amount Given to you directly | $113381.00 |
| Amount paid on your account | $3437.36 |
| Amount paid to others on your behalf | $0.00 |
| | $9544.00 |

| | |
| --- | --- |
| Appraisal Fee | $525.00 |
| Yield Spread Prem X | $2400.00 |

**Prepaid finance charges**

| | |
| --- | --- |
| Broker Origination | $4800.00 |
| Tax Service (66) | $66.00 |
| Courier Fee | $45.00 |
| Prepaid Interest | $24.00 |
| Wire Fee | $20.00 |
| Flood Certification | $14.00 |
| Settlement/Closing | $200.00 |
| Express Mail Fee | $50.00 |
| Processing Fee | $400.00 |
| Administrative Fee | $350.00 |
| Underwriting (650) | $650.00 |

| **Total Prepaid finance charges** | $6619.00 |
| --- | --- |

I/We hereby acknowledge receipt of this itemization of amount financed, and authorize direct disbursement as set forth.
BORROWER'S SIGNATURE(S)/ DATE

Arita J. Wentz _____ / _____     _____ / _____

_____ / _____     _____ / _____

Page 1 of 1

EXHIBIT



# Certified
## Real Estate
## Appraisal Service



*12*

C. E. McMonigle, Appraiser
9255 N. Main St. Dayton, OH 45415

Phone 937-836-7546
Cell  937-286-2920

Appraisal For Fair Market Value

| Owner of Property: Areta Wentz | | |
|---|---|---|

| Address of Property: 1117 N. Maple Eaton, OH 45320 | Date Visited 11/21/07 | Case #07-3423S |
|---|---|---|

### Description of Property

| Type of Const: Frame | Detached | Floor Finish: Carpet | Roofing Type: Fiberglass | 10 | Number Rooms | | Car Garage | | Storm Sashes |
|---|---|---|---|---|---|---|---|---|---|
| | Semi-Det | | | 5 | Bedrooms | | Car Carport | X | Storm Doors |
| | Row | | | 1 | Baths | | Built In | X | Gutters |
| No. of Units 1 | 2 Story | Wall Finish: Plaster | Heating Type: Elec. | X | Kitchens | | Attached | | Refrigerator |
| | Split Level | | | X | Living Room | | Detached | | Dishwasher |
| Square Feet: 1600 | % Base | | | X | Dining Room | | Fireplace | | Garbage Disp |
| | X Crawl Space | Bath Finish: Tub Surround | Cooling Type: Cent. | X | Family Room | | Enc. Porch | | Microwave |
| Lot Size: 1 Acre | X Cellar | | | | Rec Room | | Patio | X | Trash Comp |
| | Fin Attic | | | X | Utility Room | | Fenced | | Oven Range |

| Utilities | Public | Indiv. | Special Improvements: Storage Shed | Type Street Paving: Asphalt |
|---|---|---|---|---|
| Water | X | | | |
| Gas | | | | |
| Electric | X | | Drawbacks & Comments: No Garage | General Condition Property: Average |
| San Sewer | X | | | |

### Valuation Factors
### Comparative Sales Data

| Location | Price | Date | Story | Sq Ft | Rms | Bed | Bath | Const | Garage | Age | Fin | Land |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 316 W. High St. | $79,000 | 5/07 | 2 | 1700 | 7 | 3 | 2 | FRA/VIN | 1 CAR | 1920 | Con | 50x198 |
| 422 Lexington Ave. | $106,000 | 3/07 | 2 | 2700 | 10 | 6 | 3 | VIN | None | 1920 | Con | 50x149 |
| 510 Lincoln St. | $108,000 | 6/07 | 2 | 2200 | 9 | 3 | 2 | FRA/VIN | 2 CAR | 1920 | Con | 62x198 |
| 603 N. Maple St. | $108,000 | 8/07 | 2 | 2100 | 8 | 3 | 2 | VIN | 1 CAR | 1930 | N | Irregular |



This is a restricted use "market value" appraisal only for federal bankruptcy purpose. All statements of fact contained in this report are true and correct and the appraisal is within the scope of my license. I have personally inspected this property on __11/21/07_____. The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are my personal, impartial, and unbiased professional analyses, opinions, and conclusions and were developed in conformity with USPAP. My engagement in this assignment was not contingent upon developing or reporting predetermined results. I have no present or contemplated interest in the property. Compensation for the appraisal is not contingent upon the evaluation. No one provided significant real property appraisal assistance to the person signing this certification. As a result of my analysis and investigation, it is my opinion that the Fair Market value as of the above date is $_106,000.00_____.

*C E McMonigle*

C. E. McMonigle, Appraiser
State of Ohio Residential License #383461

 **BASE PARCEL DATA**    

Database last updated 2/25/2008 4:32:51 AM

**\*Current net annual taxes are in progress, please contact Preble County Treasurer @ 937-456-8140 for tax information.**

### Parcel

| | | | |
|---|---|---|---|
| Parcel ID: | M40000601402026000 | | |
| Property Location: | 1117 MAPLE ST N | | |
| Class: | R-510 Residential Dwelling Platted | | |
| Map. No.: | 014 | | |
| Tax District: | City of Eaton | School District: | Eaton SD |
| Neighborhood Code: | 04007 | Neighborhood Type: | STANDARD |
| Topography: | STANDARD | Street/Road: | PAVED |
| Utilities: | Standard | | |
| Net Annual Tax: | **$736.08** | | |

EXHIBIT

13

### Ownership

| | |
|---|---|
| Owner(s): | WENTZ, ARETA J & RITA ANN WENTZ |
| Business Name: | |
| Mailing Name: | WENTZ ARETA J & RITA ANN WENTZ |
| Mailing Address: | 1117 NO MAPLE STREET |
| | EATON OH 45320 |

### Legal Description

OUTLOT 8 S PT

0 Ac.

### Basic Residential

| | | | |
|---|---|---|---|
| Year Built: | 1920 | No. Of Stories: | 1.5 |
| Grade: | D+ | Condition: | A |
| Living Area: | 1586 | | |

Note : If multiple residential buildings exist for this parcel, information displayed is for the first building. To view data for other buildings, click on the residential link.

### Current Values

| Year | Reason | Land | Appraised (100%) Impr | Total | Land | Assessed (35%) Impr | Total |
|---|---|---|---|---|---|---|---|
| 2005 | | $26,700 | $54,500 | $81,200 | $9,340 | $19,070 | $28,410 |
| 2004 | | $20,600 | $44,200 | $64,800 | $7,210 | $15,470 | $22,680 |

# Thompson and DeVeny Co., L.P.A.
## Attorneys at Law

Lester R. Thompson
Dain N. DeVeny

———————————————

Charles J. Roedersheimer *
Andrew J. Zeigler **

1340 Woodman Drive
Dayton, Ohio 45432
Tel:    (937) 252-2030
Fax:    (937) 252-9425
* also admitted in West Virginia
** also admitted in Pennsylvania

September 25, 2007

CERTIFIED MAIL



*14*

Saxon Mortgage Inc.
Director of Regulatory Compliance
4880 Cox Road
Glen Allen, VA 23060

Ocwen Loan
Customer and Loan Servicing
P. O. Box 785057
Orlando, FL 32878-5057

Counsel/Legal Counsel
Saxon Mortgage Inc.
SCI Services, Inc.
4860 Cox Road, Suite 300
Glen Allen, Virginia 23060

Counsel/ Legal Counsel
Ocwen Financial and Mortgage Services Inc
1675 Palm Beach Lakes Blvd.
West Palm Beach, Florida 33401

RE:    Areta J. Wentz, 1117 N. Maple Street, Eaton, Ohio 45320
Loan Numbers: 11878199, 11882694, Ocwen Loan # 34737817

Dear Counsel and Lender/Assignee Representative:

This letter is to advise you that Areta Wentz and her daughter Rita Rich have discussed with me certain irregularities regarding compliance with federal and state laws regarding the referenced loans. Because of those irregularities Ms Wentz has elected to rescind the referenced loans as well as any secured mortgage covenants thereon that were allegedly executed on May 25, 2005 for these loans in the following respective amounts:

1st Loan - #11878199            $120,000.00 (Interest Only, Adjustable Rate Loan)
2nd Loan - #11882694   (#34737817)      30,000.00 (15 Year Balloon Loan)

The rescission of the referenced two loans is based upon the failure of Saxon Credit and their agent Randall Mortgage Company Inc, to comply with federal and state disclosure requirements for refinance loans. Those failures include but are not limited to the following:

a.   Failure to provide any loan documents to the borrower on the day of closing including the failure to provide a required Truth In Lending Act ("TILA") disclosure, HUD Closing Statement, Notices of Right to Cancel and variable/adjustable rate disclosures.
b.   Failure to provide at closing and subsequent failure to provide anytime correctly dated Right to Cancel Notices as required under 15 U.S.C. §1635(a) and 12 CFR §226.23(b)(1).

c.  Failure to provide the required notices and explanation of Adjustable Rate Mortgage disclosures and the Consumer Handbook on Adjustable Rate Mortgages as required by Regulation Z 12 CFR, § 226.19(b)(1).

The rescission notice is asserted pursuant 15 USC §1635 (f) which allows for the right cancel to be extended for a period of three years or until such time as the right to notice cancellation provisions have been correctly met. The rescission of these loans effectively voids the security interest as to these loans pursuant to 15 USC §1635(b) and Regulation Z §226.23(d). You, as either the originator or assignee and present holder of these loans, have twenty days after receipt of this notice to return all moneys paid and to take any and all necessary action which is appropriate to reflect the termination of the security interest. Upon completion of these responsibilities, Ms Wentz will perform the necessary actions required by 15 USC §1635 and Regulation Z, 12 C.F.R §226.23(b).

In addition to the rescission actions taken herein for the TILA violations, full disclosure of loan documents were not provided to the Ms. Wentz at the time of the loan closing as required by the Real Estate Settlement and Procedures Act (RESPA). Specifically, the Ms. Wentz did not receive a Good Faith Estimate (GFE) nor a HUD closing statement that reflected the charges, payouts and distribution of funds pursuant to RESPA Regulation X, 24 C.F.R. §§3500.7(a) and 3500.8(b) U.S.C. In addition, facts ascertained to date indicate that the loan documents were not properly executed before a notary public as required under secured transaction provisions of the Ohio Revised Code, §5301.01. This failure also negates the secured status of these loans. Further, the loan files reveal RESPA YSP claims and additional state law claims related to the negligent appraisal valuation and misrepresentations as to disclosures regarding terms of these loans and misrepresentations as to the type of loans provided to Ms. Wentz.

Please be advised that if you do not cancel the security interest and return all considerations paid by our client within the twenty (20) days of receipt of this letter as required by the provisions under 15 USC § 1601 et. seq. for each of these loans you will further be responsible for actual and statutory damages pursuant to the specific provisions 15 USC 1640(a) for failure to comply with the rescission provision of 15 U.S.C. §1635. Legal claims for the referenced violations will be undertaken in the Chapter 13 bankruptcy case which Ms. Wentz has initiated and which is being filed on or before September 30, 2007.

Ms. Wentz is prepared to resolve their claims through a tender offer/refinancing or by loan modification. Please advise if you wish to negotiate a resolution rather than pursue the dispute in litigation in the bankruptcy court.

I am further requesting that you provide a copy of the client's payment history for the referenced loans and any other documents which show loan disbursements, loan charges, payments made, other expenses or administrative costs paid, the current principal balance due on the loan and the current owner of each of these loans. Please also include all information regarding how the Loan Discount Fee has been calculated. An outline of what is requested for the payment history is attached.

Thank you for your prompt attention to this matter.

Sincerely Yours,

Charles J. Roedersheimer

Enclosed:  Specific Request

CONCURENCE OF ARETA WENTZ TO CANCELLATION

Areta Wentz concurs in the rescission action being taken and authorizes the release of her payment history to Charles J. Roedersheimer, Esquire.

_Areta Wentz_
Areta Wentz

Date _Sept 24  07_

ATTACHMENTS-SPECIFIC REQUEST RELATED TO THE PAYMENT HISTORY OR WRITTEN QUALIFIED REQUEST AND LOAN OWNERSHIP

This request is made pursuant to the RESPA, 12 USC § 2605(e) and TILA, 16 U.S.C. §1641(f)(2)

- Dates of payment by the borrowers or servicer, including receipt and recorded date for loan payments.

- Listed purpose of any payment- principal, interest, escrow, late fee, inspection charge, borrower or forced place insurance, property tax, administrative fees, etc., any foreclosure cost including attorney fees, court costs, or other related legal costs.

- A breakdown of the current monthly escrow charges, if any, showing how calculated, and the reasons for any increases during the life of the loan.

- Identification of the master servicer and current loan holder of the instrument (name, address, telephone number) if other than Saxon or Ocwen as authorized by 15 U.S.C. §1641(f)(2).

- All documents that relate to how the Loan Discount Fee was calculated and any calculations demonstrating how any Loan Discounts were provided to the consumer.



LAW OFFICES OF
# MORRIS LAING
Evans Brock & Kennedy, Chtd.

| Ralph R. Brock | Roger L. Theis | Cameron V. Michaud | Lester L. Morris |
| Robert I. Guenthner | Richard F. Hayse | Ryan M. Peck | 1901 - 1966 |
| Ken M. Peterson | Thomas R. Docking | Shannen M. Braun | Verne M. Laing |
| Robert D. Overman | Diane S. Worth | Will B. Wohlford | 1907 - 2000 |
| A.J. Schwartz, Jr. | Tim J. Moore | Edward L. Robinson | |
| Donald E. Schrag | Janet Huck Ward | Kristen D. Wheeler | Ferd E. Evans, Jr. |
| William B. Sorensen, Jr. | Roger N. Walter | Emily Cassell Docking | 1919 - 1991 |
| Jeffery L. Carmichael | James D. Young | Kathryn L. Harpstrite | Joseph W. Kennedy |
| Robert W. Coykendall | Kelly S. Herzik | | 1932 - 2005 |
| Robert K. Anderson | Luke A. Sobba | Of Counsel | |
| Susan R. Schrag | Kimberly K. Bonifas | John W. Johnson | Dennis M. Feeney |
| Karl R. Swartz | Richard A. Kear | Derek L. Park | 1953 - 2001 |

Sender's email: rkear@morrislaing.com

October 11, 2007



**VIA FASCIMILE TO (937) 252-9425**



Charles J. Roedersheimer, Esq.
Thompson and DeVeny Co., L.P.A.
1340 Woodman Drive
Dayton, Ohio 45432
(937) 252-2030

> Re:    Areta Wentz, Ocwen loan number 34737817
>        Property at 1117 North Maple St., Eaton, OH 45320

Dear Mr. Roedersheimer:

As you know, I represent Ocwen Loan Servicing, LLC ("Ocwen"), and am in receipt of your letter, dated September 25, 2007, and received by Ocwen on October 1, 2007, wherein you request that your client's loan be rescinded. Please consider this letter as the response of Ocwen, as the servicer of the loan, to your client's rescission notice under the Truth in Lending Act, 15 U.S.C. §1635(b). As a preliminary matter, Ocwen is the current servicer of your client's second loan only. The current holder of the loan Ocwen services is U.S. Bank N.A., as Trustee for the registered holders of Home Equity Mortgage Trust Series 2005-5, Home Equity Mortgage Pass-Through Certificates, Series 2005-5.

I have reviewed your client's loan documents, attempting to verify the basis of your rescission request. My review, based on the documents in Ocwen's possession, reveals no apparent violation of TILA and therefore no basis on which to grant your rescission request. As such, my client does not believe that there is any basis upon which your client may rescind this loan under TILA, and therefore denies your rescission request. If you have documents to support your claims or any additional information, my client is willing to review and reconsider.

Despite the fact that no TILA rescission is available, Ocwen is committed to resolving claims and assisting borrowers in difficulty. If your client is interested in resolving this matter, there are options available to her. Ocwen assists borrowers where possible through loss mitigation options. If your client would like to pursue such options, please contact me.

Charles J. Roedersheimer, Esq.
Page 2


In addition, I am not able to have Ohio counsel review the state law violations you mention because your letter does not specify the alleged violations. If you have additional information to provide on those claims, Ocwen will have them reviewed.

Finally, regarding your RESPA Qualified Written Request attached to your letter, it appears all inquiries are answered by the attached transaction history of your client's loan. The only item from your QWR not addressed is the loan discount points, which is not information within the possession of Ocwen. As you know, the loan was originated by Saxon Mortgage, Inc., and Ocwen considers that request to be directed at Saxon. If you believe there are additional items from your QWR to which Ocwen should respond, please let me know.

If you have any questions concerning this letter or would like to discuss resolution of this matter, please contact me.

                              Very truly yours,

                              Richard A. Kear
                              For the Firm

RAK:sh
Enclosure

GCMSS
H63-5RSC

Detail Transaction History

Page 0
Run Date/Time:
10/03/2007 11:03

LOAN#: 14737827    INVESTOR#: 2502    POOL#: 1
BORR1: Areca J' Wentz
BORR2:
PROP: 1117 North Maple Street
      Eaton OH 45320

NEXT DUE DT: 10/01/2007    INTEREST RATE: 11.27500    PRIN BAL: 29,691.99
                                                       ESC BAL:        .00

MAIL: 1117 North Maple Street
      Eaton OH 45320-1538

| TRANSACTION EFFECTIVE | TIME | RV | TRN | DESCRIPTION | NXT DUE/REF | REVERSED | AFTER TRANS PRINCIPAL | BALANCES- ESCROW | TOTAL AMOUNT | PRINCIPAL | INTEREST | APPLIED ESCROW | SUSPENSE | OTHER |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 06/14/2005 | 23:59:01 | | NEW | Loan Disbursement | NW, Mexican S | | 29,989.93 | .00 | 29,989.93- | 29,989.93- | .00 | .00 | 0.00 | 0.00 |
| 09/02/2005 | 20:25:52 | R | | Regular Payment | 09/01/2005 | | 29,979.76 | .00 | 291.98 | 10.17 | 281.78 | .00 | 0.00 | 0.00 |
| 09/04/2005 | 13:57:32 | IVT | | Investor Pool/Pool T | 10/01/2005 | | 29,979.76 | .00 | 29,979.76- | 29,979.76- | .00 | .00 | 0.00 | 0.00 |
| 09/04/2005 | 13:57:34 | IVT | | T | | | 29,979.76 | .00 | | | | | 0.00 | 0.00 |
| 10/07/2005 | 23:17:44 | R | | Regular Payment | 10/01/2005 | | 29,965.49 | .00 | 291.95 | 10.27 | 281.68 | .00 | 0.00 | 0.00 |
| 10/03/2005 | 23:16:33 | R | | Regular Payment | 11/01/2005 | | 29,955.11 | .00 | 291.95 | 10.38 | 281.59 | .00 | 0.00 | 0.00 |
| 11/01/2005 | 23:17:39 | R | | Regular Payment | 12/01/2005 | | 29,946.67 | .00 | 291.95 | 10.36 | 281.59 | .00 | 22.50 | 0.00 |
| 12/01/2005 | 23:26:09 | R | | Regular Payment | 01/01/2006 | | 29,938.11 | .00 | 291.95 | 10.14 | 281.49 | .00 | 22.50 | 0.00 |
| 12/30/2005 | 14:35:53 | IVT | | Investor Pool/Pool T | | | | | 314.85 | 10.56 | 281.39 | .00 | 22.50 | 0.00 |
| 12/30/2005 | 14:35:55 | IVT | | T | | | 29,938.11 | .00 | | | | | 22.50 | 0.00 |
| 02/01/2006 | 23:21:50 | R | | Regular Payment | 02/01/2006 | | 29,938.11 | .00 | 29,938.11- | 29,938.11- | .00 | .00 | 22.50 | 0.00 |
| 02/01/2006 | 23:21:49 | R | | Regular Payment | 03/01/2006 | | 29,927.45 | .00 | 314.85 | 10.66 | 281.29 | .00 | 22.50 | 0.00 |
| 03/28/2006 | 23:21:04 | R | | Regular Payment | 04/01/2006 | | 29,916.69 | .00 | 314.85 | 10.76 | 281.19 | .00 | 22.50 | 0.00 |
| 04/03/2006 | 23:10:22 | R | | Regular Payment | 05/01/2006 | | 29,905.83 | .00 | 314.85 | 10.86 | 281.09 | .00 | 22.50 | 0.00 |
| 05/01/2006 | 23:10:26 | R | | Regular Payment | 06/01/2006 | | 29,894.87 | .00 | 314.85 | 10.96 | 280.99 | .00 | 22.50 | 0.00 |
| 06/01/2006 | 00:45:16 | R | | Regular Payment | 07/01/2006 | | 29,883.81 | .00 | 314.85 | 11.06 | 280.89 | .00 | 22.50 | 0.00 |
| 07/03/2006 | 23:28:46 | R | | Regular Payment | 08/01/2006 | | 29,872.64 | .00 | 314.85 | 11.17 | 280.78 | .00 | 22.50 | 0.00 |
| 08/01/2006 | 01:17:31 | R | | Regular Payment | 09/01/2006 | | 29,861.37 | .00 | 314.85 | 11.27 | 280.68 | .00 | 22.50 | 0.00 |
| 09/05/2006 | 23:49:00 | R | | Regular Payment | 10/01/2006 | | 29,849.99 | .00 | 314.85 | 11.38 | 280.57 | .00 | 22.50 | 0.00 |
| 10/03/2006 | 23:16:54 | R | | Regular Payment | 11/01/2006 | | 29,838.51 | .00 | 314.85 | 11.48 | 280.47 | .00 | 22.50 | 0.00 |
| 11/07/2006 | 23:21:48 | R | | Regular Payment | 12/01/2006 | | 29,826.92 | .00 | 314.85 | 11.59 | 280.36 | .00 | 22.50 | 0.00 |
| 12/04/2006 | 23:22:28 | R | | Regular Payment | 01/01/2007 | | 29,815.22 | .00 | 314.85 | 11.70 | 280.25 | .00 | 22.50 | 0.00 |
| 01/02/2007 | 23:27:41 | R | | Regular Payment | 02/01/2007 | | 29,803.41 | .00 | 314.85 | 11.81 | 280.14 | .00 | 22.50 | 0.00 |
| 02/02/2007 | 23:31:22 | R | | Regular Payment | 03/01/2007 | | 29,791.49 | .00 | 314.85 | 11.92 | 280.03 | .00 | 22.50 | 0.00 |
| 03/01/2007 | 23:59:01 | R | | Regular Payment | 04/01/2007 | | 29,767.31 | .00 | 314.85 | 12.03 | 279.92 | .00 | 22.50 | 0.00 |
| 04/04/2007 | 23:25:39 | R | | Regular Payment | 05/01/2007 | | 29,755.05 | .00 | 314.85 | 12.15 | 279.80 | .00 | 22.50 | 0.00 |
| 05/02/2007 | 23:19:31 | R | | Regular Payment | 06/01/2007 | | 28,742.67 | .00 | 314.85 | 12.26 | 279.69 | .00 | 22.50 | 0.00 |
| 06/04/2007 | 23:28:53 | R | | Regular Payment | 07/01/2007 | | 28,730.18 | .00 | 314.85 | 12.38 | 279.57 | .00 | 22.50 | 0.00 |
| 07/03/2007 | 23:19:16 | R | | Regular Payment | 08/01/2007 | | 28,717.57 | .00 | 324.80 | 12.49 | 279.46 | .00 | 32.85 | 0.00 |
| 08/02/2007 | 23:34:51 | R | | Regular Payment | 09/01/2007 | | 28,704.84 | .00 | 324.80 | 12.61 | 279.34 | .00 | 32.85 | 0.00 |
| 09/04/2007 | 23:43:11 | R | | Regular Payment | 10/01/2007 | | 29,691.99 | .00 | 324.80 | 12.73 | 279.22 | .00 | 32.85 | 0.00 |
| | | R | | Regular Payment | | | | | | 12.85 | 279.10 | | 32.85 | |



*16*

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Saxon Mortgage, Inc.
Director of Reg. Compliance
4880 Cox Road
Glen Allen VA   23060

A.Wentz-Ltr.CR

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature

X _____  ☐ Agent
                              ☐ Addressee

B. Received by ( Printed Name)   C. Date of Delivery

D. Is delivery address different from item 1?   ☐ Yes
   If YES, enter delivery address below:        ☐ No

SEP 27 2007

3. Service Type
   ☐ Certified Mail     ☐ Express Mail
   ☐ Registered         ☐ Return Receipt for Merchandise
   ☐ Insured Mail       ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)             ☐ Yes

2. Article Number
   (Transfer from service label)

7005 1820 0005 1620 7440

PS Form 3811, February 2004         Domestic Return Receipt                102595-02-M-1540

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3. Also complete
  item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse
  so that we can return the card to you.
■ Attach this card to the back of the mailpiece,
  or on the front if space permits.

1. Article Addressed to:

Counsel/Legal Counsel
Saxon Mortgage, Inc.
SCI Services, Inc.
4860 Cox Road, Ste 300
Glen Allen, VA 23060

A.Wentz-Ltr-CR

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent
                    ☐ Addressee

B. Received by ( Printed Name )   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:        ☐ No

GLEN ALLEN VA
SEP 2 7 2007

3. Service Type
   ☐ Certified Mail    ☐ Express Mail
   ☐ Registered        ☐ Return Receipt for Merchandise
   ☐ Insured Mail      ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number
   (Transfer from service label)

   7005 1820 0005 1620 7426

PS Form 3811, February 2004        Domestic Return Receipt        102595-02-M-1540

# FEDERAL TRUTH-IN-LENDING DISCLOSURE

[ ] INITIAL    [x] FINAL

| Creditor Saxon Mortgage, Inc.
4880 COX ROAD
Glen Allen, VA 23060 | Borrower(s)  Arita J. Wentz
Rita Ann Rich |

Loan No.  11878199

Processor  Tena Griffin

Date of Disclosure 05/25/2005

Est. Settlement Date (Date of Closing) 05/25/2005

Mailing Address  1117 N Maple Street
Eaton, OH 45320

**EXHIBIT**

17

| Annual Percentage Rate

The cost of your credit as a yearly rate.

**9.064%** | Finance Charge

The dollar amount the credit will cost you.

**$231,610.97** | Amount Financed

The amount of credit provided to you or on your behalf.

**$113,381.00** | Total of Payments

The amount you will have paid after you have made all payments as scheduled.

**$344,991.97** |

ITEMIZATION:  You have a right at this time to an ITEMIZATION OF AMOUNT FINANCED.

[ ] I do not want an itemization _____ (initials)    [ ] I want an itemization _____ (initials)

Your MONTHLY PAYMENT SCHEDULE will be:

| # Payments $ Payment Beginning On | # Payments $ Payment Beginning On | # Payments $ Payment Beginning On |
|---|---|---|
| 24      730.00    07/01/2005
36      875.00    07/01/2007
299     986.57    07/01/2010
1       987.54    06/01/2035 | | |

[ ] REQUIRED DEPOSIT:  The annual percentage rate does not take into account any required deposit.
[ ] DEMAND FEATURE:  This obligation has a demand feature.
[x] VARIABLE RATE MORTGAGE:  Variable Rate Mortgage Program disclosures have been provided earlier which discuss this and other variable rate features of your loan.  The annual percentage rate may increase during the term of this transaction if the "Index" increases.  The Index is:
  [x] Six Month London Interbank Offered Rate as published in the Wall Street Journal

[x] The interest rate will not increase or decrease more than once every 6    payment(s) effective with payment number 25.
[x] Interest rate cannot increase or decrease  more than 3.000  %  at the first adjustment or  1.000  %  at each subsequent adjustment.
[ ] The maximum interest rate increase over the term of the loan will be         %  over the initial rate.
[ ] The maximum interest rate decrease over the term of the loan will be         %  below the initial rate.
[x] The maximum interest rate will be 13.300  %
[x] The minimum interest rate will be  6.300    %
[ ] The maximum payment increase or decrease at any time will be         %
[ ] Unpaid interest will be added to the principal
  Any increase or decrease in the interest rate may take the form of:
  [ ] Increased or decreased payment amounts.
  [ ] An increased or decreased amount due at maturity.
    If the interest rate increases by         %  at the end of         payment(s), your payment effective with payment
    number         would increase to $
  [ ] You may convert to a fixed rate on                                  and only during the
  following time periods:
    You should be aware that if you exercise this option, the interest rate may be increased from the adjustable rate you have been paying.
    Your new interest rate will be determined by: _____
  _____
    The limit on interest rate change at each adjustment does not apply to the conversion to the fixed rate.
[x] ASSUMPTION:  Someone buying your property
  [ ] may, subject to conditions   [ ] cannot  [x] assume the remainder of your loan on the original terms.
PROPERTY INSURANCE:  Property insurance is required in this transaction.  You may obtain such insurance from anyone that is acceptable to the creditor.  If you purchase from the creditor you will pay         for a         month term.
SECURITY:  You are giving a security instrument in:
  [ ] The goods or property being purchased
  [x] Real property you own located at  1117 N Maple Street, Eaton, OH 45320
  [ ] Other Collateral
FILING FEES AND TAXES:  $
LATE CHARGE:  If a payment is more than 15    days late, you will be charged  5.000  %  of the Principal and Interest Payment
  Minimum late charge of $1.  Maximum late charge of $36.
PREPAYMENT:  If you pay off early, you
  [ ] may   [ ] will not    have to pay a penalty.
  [x] may   [ ] will not    be entitled to a refund of part of the finance charge.
  See your actual contract documents for any additional information about nonpayment, default, or any required repayment in full before the scheduled date as well as prepayment refunds and penalties.
  [ ] All dates and numerical disclosures, except the late payment disclosures, are  ESTIMATES.

I/we acknowledge receiving and reading a copy of this disclosure.  I/we understand there is no commitment for the creditor to make this loan, and there is no obligation for me/us to accept this loan upon delivery or signing of this disclosure.

| Borrower  Arita J. Wentz | Date / | Borrower  Rita Ann Rich | Date / |
| n/a | | n/a | |
| Borrower | Date / | Borrower | Date / |

Last Modified 06/18/02    11878199
Saxon Truth-In-Lending

Page 1 of 1